HADLEY v. HADLEY.

(*Nashville.*    January 26, 1898.)

1. WILLS.    *In construction of, intention controls.*

It is axiomatic that in the construction of wills the Court will
ascertain, 'f possible, from an examination of the whole instru-
ment, the intention of the testator, and when this is ascer-
tained it will be carried out unless it countervail public policy
or some established rule of law.    Intention is the "pole star,"
to direct the Courts in the interpretation of wills.    (*Post, pp.
451–453.*)

Cases cited: Williams v. Williams, 10 Yer., 20; Henry v. Hogan,
4 Hum., 208; Williams v. Jones, 2 Swan, 620; Fulkerson v. Bul-
lard, 3 Sneed, 260; Dixon v. Cooper, 88 Tenn, 177; Jones v.
Hunt, 96 Tenn., 372; 6 Pet., 680.

2. SAME.    *Case in judgment.*

Testator devised lands to his wife in trust for his two sons for
life, then to their respective heirs.    He undertook to designate
the specific interests or portions that should go to each son
and his heirs.    He then added this clause, viz.: "I have here-
tofore given to my son, John L. Hadley, $7,000, and in dividing
my tract of land as above, it has been my wish to equalize
them as near as possible, but the parts given to each have not
been surveyed, and, therefore, I may have given to one more
than I intended.    I trust to the sense of justice of my said sons,
that if I have given more to one than the other, that they will
do right, and authorize my wife, as trustee, to assist them in
arriving at justice."    Held: That the testator's manifest pur-
pose was to make his sons equal in the distribution of his
estate, and, for this purpose, to invest them with a power to
make an equal division, even if that required some departure
from the dispositions of the will.    And, further, that a division
of the lands made by the sons, though departing from some
dispositions of the will, were binding upon the heirs.    (*Post,
pp. 447–455.*)

3. SAME.    *Precatory words.*

The Courts strongly incline to construe words of recommendation
and entreaty in a will as obligatory and imperative in further-

Hadley *v.* Hadley.

ance of an object or result that accords with testator's manifest intention, and the plain moral duty of the devisee or legatee. (*Post, pp. 455, 456.*)

Cases cited: Anderson *v.* McCullough, 3 Head, 614; Thompson *v.* McKissick, 3 Hum., 631; Anderson *v.* Hammond, 2 Lea, 281.

---

FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County. H. H. COOK, Ch.

J. P. HELMS and COOPER & COOPER for John L. Hadley.

NICHOLAS D. MALONE for Livingstone Hadley.

BEARD, J. Dr. John L. Hadley, having made his will disposing of a very large landed and personal estate on December 11, 1870, died on the twenty-sixth of the same month, leaving surviving him a widow and two sons, John and Robert. Certain clauses of this will, and their practical construction by the two sons, furnish the occasion for the present controversy. These clauses are as follows:

"*Item* 1. I give and bequeath to my wife, Amelia, $8,000 in bonds of the United States for her lifetime, and, at her death, the same to go to my sons, John and Robert. In other words, I give to her, during her life, the interest on said bonds, and, at her death, I give the said bonds to my sons, John

and Robert.   I also give to my said wife the interest in the real estate which the law would give her as a dower in case of my intestacy.   I also give to my said wife all my household and kitchen furniture, including my clock, two silver butter bowls, and my silver-handled knives.

"*Item* 4.   I give to my wife, Amelia, in trust, to hold the same for the use of my son, John L. Hadley, during his life, and, at his death, to convey it to his heirs, a tract of land lying in Hadley's, or Jones', bend, in the county of Davidson, State of Tennessee, embraced within the following boundary: Beginning at the northeast corner of the land owned by Paul Dismukes in his lifetime, and running thence northeastwardly to the house now occupied by W. H. Bumpass on the west or south bank of the Cumberland River, thence down said river to the lands of Mrs. Ann Turner, thence along the east and northern boundary to the beginning.

"*Item* 5.   I will and bequeath the remainder of the tract of land, or rather the rest of the tract of land I own in the said bend, to my said wife, in trust, to hold the same for the use of my son, Robert L. Hadley, for and during his natural life, and in trust to convey said land, at the death of my son, Robert L. Hadley, to his heirs.

"*Item* 6.   I have heretofore given to my son, John L. Hadley, $7,000, and, in dividing my tract of land as above, it has been my wish to equalize them as near as possible, but the parts given to

each has not been surveyed, and, therefore, I may have given to one more than I intended. I trust to the sense of justice of my said sons, that if I have given more to one than the other, that they will do right and authorize my wife, as trustee, to assist them in arriving at justice. To Robert I have given nothing or made no advancement; to John I have advanced $7,000, as before stated, and I have attempted to give Robert land, with improvements thereon, which was worth $5,000 more than the land I gave to John.

"*Item* 7. I give all the rest and residue and remainder of my estate, of every nature whatever, whether the same be real or personal property or choses in action, and consisting of debts due me from individuals, from the corporation of Nashville, from the county of Davidson, from the State, or otherwise, to my said wife Amelia, in trust, to hold the same for the use, enjoyment, and benefit of my two sons, John and Robert, during their lives, and at their death in trust to convey it to their heirs at law."

In 1872 John and Robert determined to dissever their interest in their father's estate, and thereupon executed deeds of partition of his entire realty, and, at the same time, divided between themselves the personal property of every kind. At the death of Dr. Hadley, his home tract in Hadley's bend of the Cumberland River contained about 2,225 acres; and it was out of this tract the testator provided for

16 P—29

his son, John, a life estate by Item 4 of his will.
Upon a survey made after the date of the will, and
about three days before the death of the testator,
it was ascertained that the area included within the
boundary set out in said item, contained 718½ acres.
The improvements, consisting of the mansion, barns,
etc., were on the remaining part of the home tract.
The testator was also the owner of an $8,000 claim
against one Clark, which was secured on 380 acres
of land adjoining this home tract. While the testator
held the legal title by a deed in fee to this prop-
erty, yet this was in fact and law a mortgage,
which was not finally foreclosed until after the par-
tition of 1873; still this tract was included in that
partition, and properly so, as his devisees were in
possession at that date, and they acquired the equity
of redemption soon afterwards.

In the deed of partition, Robert L. Hadley con-
veyed to John L. Hadley 920 acres of the home
tract, including the 718½ falling within the bounda-
ries set out in Item 4 in the will, and also 202
acres additional, the 380-acre Clark tract, and other
tracts of land; and John conveyed to Robert the
remaining 1,305 acres of the home tract, and much
other valuable real property. The effect of this
partition was that, in this division, Robert obtained
an advantage over his brother, John, of $5,000 to
$10,000—that is, he received one-half of the entire
estate, real and personal, in value, plus the improve-
ments on the 1,305 acres of the home tract, worth

that excess.    Under this voluntary partition, these life tenants went into possession of their respective properties.    In 1893 John died, and the estate thus received by him has been distributed among his heirs.    Three years after his death, and twenty-four after this partition, the present bill was filed.

The complainants are the children of Robert L. Hadley—save one, Pearcy, who is a son-in-law—and the defendants are the heirs of John L. Hadley, deceased, together with the father of complainants, the said Robert L., and the purpose of this bill is to impeach and have annulled the deed of partition so far as it allotted the extra 202 acres of the home tract and the whole of the Clark tract to John L., the complainants seeming content with the act of the brothers save in this regard.

The contention of complainants is, that while this partition was legal and effectual so far as the life tenants were concerned, yet as it was in the face of the manifest intention of the testator, it cannot interfere with the rights of complainants as vested remaindermen.    This contention involves the necessity of a construction of those clauses of the will under which this partition was made.

It is axiomatic, that, in the construction of wills, the courts will ascertain, if possible, from an examination of the whole instrument, the intention of the testator, and when this is ascertained it will be carried out, unless it countervail public policy or some established rule of law.    Pritchard on Wills, 384;

*Williams* v. *Williams*, 10 Yerg., 20; *Henry* v. *Hogan*, 4 Hum., 208; *Williams* v. *Jones*, 2 Swan, 620; *Fulkerson* v. *Bullard*, 3 Sneed, 260; *Dixon* v. *Cooper*, 4 Pickle, 177; *Jones* v. *Hunt*, 96 Tenn., 372.

This rule, as is well remarked by Mr. Pritchard in the section of his work just cited, "is grounded in the nature and purpose of construction by the Court; that is, to so construe a writing authorized by law to be made, which purports to be a disposition of his, the testator's, property, that it will accomplish what he wills to do."

This intention must be found within the lids of the instrument, and while, as was observed by Chief Justice Marshall in *Smith* v. *Bell*, 6 Peters, 680, and repeated by Justice Mathews in *Colton* v. *Colton*, 127 U. S., 300, "cases on wills may guide us to general rules of construction, but unless a case be cited in every respect directly in point, and agreeing in every circumstance, it will have little or no weight with the Court, who always look upon the intention of the testator as the polar star to direct them in the interpretation of wills."

And, again, it has been tersely remarked that "all the cases upon a subject like this must proceed on a consideration of what was the intention of the testator." *Shaw* v. *Lawless*, 5 Clark & F., 129.

It is apparent, upon the face of this will, that the testator's intention was to make his two sons, and their "heirs," equal in the estate passing under the instrument. In every clause in which the two

are mentioned this is made manifest.    After the termination of the life estate of his widow in the $8,000 of bonds of the United States, they are to be shared equally by these brothers.    This purpose to produce equality between these two and their respective "heirs" is again evidenced in the sixth and seventh items of the will.    This being so, we would agree with the view expressed by Judge Caruthers in *Campbell* v. *Watkins*, Thompson's Tenn. Cases, 184, that "this is one of the cases where the letter must yield to the spirit of the instrument, so as to carry out the evident intention," unless the will, when taken as a whole, was so ambiguous or obscure as to make it impossible.

We have already seen from the record that in the partition made by the two brothers that the rule of equality was observed, save that the improvements on Robert's part of the home place gave him the advantage of his brother from $8,000 to $10,000. The heirs of John, however, are not complaining of this advantage; the children of Robert are here insisting that the partition was unauthorized to the extent indicated.

Their contention is that the testator having given to John for life, and his heirs in remainder, a tract within the boundaries set out in Item 4 of his will, and the balance of the tract to Robert for life, and complainants in remainder, that these life tenants could not bind the complainants by a division in which 202 acres of that part of the home place, in

which they had an interest, was allotted to John and his heirs. The authority for this action of the life tenants is found, if it existed, in Item 6 of the will. In this item the testator distinctly avows his purpose to equalize his sons "as near as possible." He had already given to John $7,000, and, in dividing his home tract by Items 4 and 5, he intended to carry out his purpose, but, as the part given to each had not been surveyed, he expresses distrust of this division, and says, "I may have given to one more than I intended," and then adds, "I trust to the sense of justice of my said sons, that if I have given more to one than to the other, that they will do right, and authorize my wife, as trustee, to assist them in arriving at justice." Taken with the sentence preceding, there is no obscurity in this clause. It is the home tract, and the division of it made in the item just above, to which he refers; and it is this division, made by the testator in the dark and without a survey, which, if proven to violate the rule of equality, he imposes on the conscience of his sons to set right—that is, to correct and make equal. That this is devolved upon them as an active duty is clear from the last clause of this sentence, in which he authorizes his wife, "as trustee, to assist them in arriving at justice." To emphasize his design, the testator adds: "To Robert I have given nothing or made no advancement; to John I have advanced $7,000, as before stated, and I have attempted to give Robert land with improve-

ments, which was worth $5,000 more than the land I give to John.''

Why it is he here places the excess at $5,000 is not explained. The point is, that it is once more the expression of a desire to produce equality between the two sons; this equality being secured to them in the division, the "heirs" of the life tenants would enjoy its benefits as remaindermen. These life tenants thus had imposed upon them the positive duty of doing what their father had sought, and yet failed, to do; their mother was not to do it, but simply "to assist them in arriving at justice."

We have no doubt that these terms import a trust, or, rather, that by them these two brothers were donees of a power in the nature of a trust, which, if they had failed to execute by reason of disagreement or otherwise, a Court of Equity, at the instance of either, or of the remaindermen, would have executed. Even in cases where it is a difficult matter to determine whether words of recommendation or entreaty are imperative or not, "there is always a tendency to construe" them "as obligatory in furtherance of a result which accords with a plain moral duty on the part of a devisee or legatee, and with what it may be supposed the testator would do if he could control his action." *Warner* v. *Bates*, 98 Mass., 274. But in the present, we have a case of these donees discharging a plain moral duty, and in accord with the unmistakable intent of the testator, in obedience to words of

recommendation admitting of no difficulty of interpretation. In the clauses already set out we find words of earnest recommendation or entreaty, which, if treated otherwise than as imperative, would do violence to the evident intention of the testator. A subject of the recommendation that is certain, and the object or persons to receive benefits therefrom equally certain, these are the essential elements of such a trust. *Anderson* v. *McCullough*, 3 Head, 614; *Thompson* v. *McKissick*, 3 Hum., 631; *Anderson* v. *Hammond*, 2 Lea, 281; *Colton* v. *Colton*, *supra;* 1 Jarmon on Wills, * 385. And the parties upon whom this trust was imposed, having executed it, it will not be disturbed.

The result is, that the decree of the Court of Chancery Appeals is, in all things, affirmed.