Mrs. Georgia B. Daly *et al. v.* W. L. Daly *et al.*

(*Nashville.*    December  Term,  1919.)

**WILLS.**  Words of desire and request held to create a precatory trust.

Where a testator, after giving his wife all his real and personal
property, declared that he had sold to one relative a parcel of land
accepting notes in payment, and requested that when the relative
should have paid all but the last $1,500 that amount should be
given him, and further stated that he valued the land occupied by
another relative at $5,000, and requested that such relative be al-
lowed to purchase it on installments, the requests, as they left the
wife no discretion and were definite and certain, must be treated
as creating precatory trusts in favor of the two relatives.

Cases cited and approved:  Wright v. Atkyns, 1 Turn. & Russ., 157;
Anderson v. Hammond, 70 Tenn., 281.

Cases cited and distinguished:  Ogvilvie v. Wright, 140 Tenn., 114;
Bradley v. Carnes, 94 Tenn., 27;  Beecher v. Hicks, 75 Tenn., 207;
Colton v. Colton, 127 U. S., 300;  Williams v. Williams, 1 Sim.
(N. S.), 358;  Briggs v. Penny, 3 MacN. & G., 546;  Hess v. Singler,
114 Mass., 56;  Knox v. Knox, 59 Wis., 172;  Warner v. Bates, 98
Mass., 274;  Anderson v. McCullough, 40 Tenn., 615;  Hadley v.
Hadley, 100 Tenn., 446.

---

FROM GILES.

---

Appeal from the Chancery Court of Giles County
to the Court of Civil Appeals, and by *certiorari* to the
Court of Civil Appeals, from the Supreme Court.
—Hon. W. B. Turner, Chancellor.

---

---

ESLICK & ESLICK, for plaintiff,

WOODWARD & WADE, for defendants.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The bill in this cause was filed by Mrs. Georgie B. Daly (now Mrs. Neal) in her own right, and as executrix of Thomas E. Daly, for the purpose of having his will construed. Said will is as follows:

"I, Thomas E. Daly, a resident citizen of Giles County, Tennessee, being of sound mind and disposing memory do make and publish this paper writing as my last will and testament, hereby revoking and making void all other will or wills by me at any other time heretofore made.

"I hereby give to my wife, Georgie B. Daly, all of my estate both real and personal of whatsoever nature.

"I make no disposition of my life insurance and desire this to pass as the law directs to my beloved wife, Georgie B. Daly.

"I further request that my beloved wife, Georgie B. Daly, qualify as executrix of my estate, without bond, and that she get our mutual friend J. H. Ragsdale to advise and assist her winding up and handling said estate to the best advantage possible.

"I have sold to Guy B. Daly, about 138¼ acres of land off of my home place in district No. 1, Giles county, Tenn. I hold $3,473.55 in sundry notes not due. It is my desire that should Guy B. Daly for any reason be unable to meet any of said payments, time should be

give in which to pay same. In case he should be so
fortunate as to meet all notes promply. I request that
when he has paid all but the last fifteen hundred dollars
($1,500) then this amount be given him.

"I have remaining in the old home place in district
No. 1, about near 200 acres of land where W. L. Daly
and family now live.

"I value this place at five thousand dollars ($5,000).
It is my desire to help W. L. Daly and his other heirs
(except Guy B. Daly) provide themselves a home;
therefore I request that if the said W. L. Daly wants
to secure this place, I suggest that when he executes
ten non-interest bearing notes due respectively 1, 2,
3, 4, 5, 6, 7, 8, 9, and 10 years from date, then you
can make him deed, otherwise should W. L. Daly de-
cline this offer, then have said tract of land sold and
turned back into my estate.

"I desire further at your death, you will to W. T.
Clay and his heirs at least five thousand dollars ($5,000)
if you have it left after all of your just debts are paid
and in your judgment and wisdom you feel disposed,
I will that you may make the amount ten thousand
($10,000) dollars instead of $5,000.

"All other moneys or realestate you may be in pos-
session of growing out of my estate, it is my desire that
you may dispose of same (in a way) that according
to your good judgment it will do the most good.

"Witness my hand, this Feb. 15, 1915,

"[Signed] THOMAS E. DALY."

The defendants to the suit are the three persons
named in said will as beneficiaries, viz., Guy B. Daly,
W. L. Daly, and W. T. Clay.

---

Daly v. Daly.

---

The complainant charges in her bill that, under a proper construction of said will, she takes all of the property of her husband absolutely to do with as she pleases, and that neither of the defendants has a legal right to enjoy the benefits conferred upon them by said will only at her discretion.

The defendant W. T. Clay suffered a *pro confesso* to be entered against him, and on the hearing the Chancellor decreed that he took no interest under the will, and that decree was not appealed from.

The defendants Guy B. Daly and W. L. Daly filed a cross-bill, in which they alleged that trusts were created by said will in their favor; the former insisting that he had complied with the condition of the will and was entitled to the $1,500 mentioned, and the latter insisting that he had signified his willingness to accept the offer made to him in the will, and that the complainant had repeatedly promised to execute a deed to him, which she never did, but instead filed the bill in this cause. He made a tender of the ten notes called for in said will.

On the hearing the Chancellor held that a trust was created by said will in favor of these two defendants, and gave them the relief prayed for in their cross-bill.

On appeal the decree of the Chancellor was affirmed by the court of civil appeals, and the case has been brought to this court by petition for a writ of *certiorari*.

Testator, T. E. Daly, died in September, 1915. He lived with his wife in a handsome dwelling in Pulaski, Tenn. He never had any children. His other relatives

were all collateral.   The defendant W. L. Daly was a
first cousin of T. E. Daly, and the defendant Guy B.
Daly is a son of W. L. Daly.   The defendant W. L.
Daly and his family had lived upon lands belonging
to T. E. Daly for nearly 30 years, and for the past 12
or 15 years had lived upon the 200-acre tract of land
involved in this suit.   Testator and W. L. Daly had
been closely associated all of their lives.   They had been
playmates and schoolmates in their boyhood, and the
most cordial relations existed between them.   During
all the years that W. L. Daly resided on the lands of
the testator, they never had any rental contract, and at
the end of each year W. L. Daly paid testator whatever
they thought was right.   Testator, at one time, had
W. L. Daly to take into his home his invalid and para-
lyzed brother; it not being satisfactory for him to live in
the home of testator.   This brother was totally para-
lyzed even beyond the power of speech and had to be
lifted, bathed, fed, and looked after like an infant.   W.
L. Daly and his family cared for this brother of testator
for abuot a year, and made no charge for their
services.   At another time, at the request of testator,
said W. L. Daly took a half-sister of T. E. Daly and
cared for her, as it was unsatisfactory for her to reside
at the home of T. E. Daly.   This sister was about 70
years of age and practically an invalid, and this was
done without pay.

Testator seemed to be fond of the defendant Guy B.
Daly, and they conducted a live stock business jointly,
testator furnishing the funds and Guy B. Daly furnish-

ing the labor and attention, and they divided the profits. Neither W. L. Daly nor Guy B. Daly were men of means.

The estate of the deceased, at the time of his death, was worth from $15,000 to $35,000 although the record discloses that a short time prior thereto, and perhaps, at the time he wrote his will involved herein, he was worth a great deal more than that sum, perhaps as much as $100,000. The will in question was drafted by testator, and, while he was a good business man, he was not a man learned in the law. It was under these surroundings that testator wrote his will.

It is insisted by the complainant that this case falls within the rule announced in *Ogvilvie* v. *Wright*, 140 Tenn., 114, 203 S. W., 753, and kindred cases. In that case the testator gave his property to his wife and said:

"And it is my wish that she do with said property as she may think best, and it is further my wish and desire that at the death of my wife that all our estate . . . shall go to our adopted daughter, Jessie Clay Wright."

It was held that the wife took the property absolutely. The rule upon which this and like cases are based is stated in *Bradley* v. *Carnes,* 94 Tenn., 27, 27 S. W., 1007, 45 Am. St. Rep., 696, as follows:

"If the first taker is given an estate in fee or for life, coupled with an unlimited power of disposition, the fee or absolute estate vests in the first taker, and the limitation over is void. If the power is dependent upon a contingency, or if the power be definitely qualified, the estate of the first taker is limited to life, and the remainder over takes effect."

Where, of course, the subsequent gift is inconsistent with or repugnant to that made to the first taker, as stated above, the limitation over would be void. For example, had the testator in the instant case added to the second  clause the words "to do with as she pleases," then unquestionably the $1,500 gift to Guy B. Daly would have been void and nonenforceable.

There are two ways in which property may be devised or conveyed. In the first case where the conveyance or devise is coupled with a power of disposition, in which case any condition or limitation, subsequently attached, would be ineffectual. On the other hand, where a party conveys or devises property without such power of disposition, but coupled with a duty to use the property in a certain manner, the condition or limitation would be valid.

This is illustrated in the case of a deed in *Beecher* v. *Hicks,* 7 Lea, 207, where the conveying part of the deed was to Sarah Hichs, without limiting, defining, or stating the estate she was to take; but under the *habendum* clause the estate intended to be conveyed was limited to an estate in trust in said Catherine for herself during her lifetime, and for her children. The court recognized the general rule, and held that:

"The *habendum* is clearly not repugnant to the premises, but determines the estate granted, and only adds new grantees who take by way of remainder. Looking to the whole instrument, the mother was not entitled to take and does not take a direct fee, unless it be by way of trust, in which case the trust would end when its purpose was accomplished by her death."

The cases relied on by the complainant do not apply, since no power to dispose of or use the property was given in the will.

So that the only question to be determined here is: Did the testator intend to make the provisions of the will here involved imperative, or was he merely making suggestions or recommendations to his wife, and leaving it to her judgment and discretion as to whether the defendants Guy B. Daly and W. L. Daly should enjoy the benefits of his bounty, as provided for in the will?

Perhaps the leading case upon precatory trusts, in which the authorities are collated and the question is fully and able discussed, is *Colton v. Colton*, 127 U. S., 300, 8 Sup. Ct., 1164, 32 L. Ed., 138. The will in that case provided as follows:

"I give and bequeath to my said wife, Ellen M. Colton, all of the estate, real and personal, of which I shall die seized or possessed or entitled to. I recommend to her the care and protection of my mother and sister, and request her to make such gift and provision for them as in her judgment will be best."

The suit in that case was instituted by the mother and sister to have a trust decreed in their favor. The court quoted approvingly from Vice Chancellor Cranworth's opinion in *Williams* v. *Williams*, 1 Sim. (N. S.), 358, where he said: "The point really to be decided in all these cases is whether, looking at the whole context of the will, the testator has meant to impose an obligation on his legatee to carry his express wishes into effect, or whether, having expressed his wishes,

he has meant to leave it to the legatee to act on them or not ·at his discretion.''

And referring to rules for ascertaining this intention sought to be deduced from the numerous decisions on the subject, he adds: ''I doubt if there can exist any formula for bringing to a direct test the question whether words of request, or hope, or recommendation, are or are not to be construed as obligatory.''

The court then quoted approvingly from Lord Chancellor Truro in *Biggs* v. *Penny,* 3 MacN. & G., 546, as follows:

''I conceive the rule of construction to be that words accompanying a gift or bequest expressive of confidence, or belief, or desire, or hope that a particular application will be made of such bequest, will be deemed to import a trust upon these conditions: First, that they are so used as to exclude all option or discretion in the party who is to act as to his acting according to them or not; secondly, the subject must be certain; and, thirdly, the objects expressed must not be too vague or indefinite to be enforced.''

The court then quoted approvingly from Chief Justice GRAY in *Hess* v. *Singler,* 114 Mass., 56, as follows:

''It is a settled doctrine of courts of chancery that a devise or bequest to one person, accompained by words expressing a wish, entreaty, or recommendation that he will apply it to the benefit of others, may be held to create a trust, if the subject and the objects are sufficiently certain.''

The court, in speaking of the will it was considering said: ''Is that request equivalent to a command, or

Daly v. Daly.

is it a mere solicitation, which after his death she may reject and disregard without violating the terms of his will and the conditions upon which she accepted her estate under it? Is there anything in the language clause itself, inits context, or in the circumstances and situation of the testator when he framed it, to indicate an intention on his part to confer upon his widow the authority to accept his property, and at the same time to refuse to use it according to his request?"

And further on the court, in speaking of the meaning of the word "request," said:

"It is an error to suppose that the word 'request' necessarily imports an option to refuse, and excludes the idea of obedience as corresponding duty. If a testator requests his executor to pay a given sum to a particular person, the legacy would be complete and recoverable. According to its context and manifest use, an expression of desire or wish will often be equivalent to a positive direction, where that is the evident purpose and meaning of the testator; as where a testator desired that all of his just debts, and those of a firm for which he was not liable, should be paid as soon as convenient after his decease, it was construed to operate as a legacy in favor of the creditors of the latter. *Burt* v. *Herron,* 66 Pa., 400. And in such a case as the present it would be but natural for the testator to suppose that a request, which, in its terms, implied no alternative, addressed to his widow and principal legatee, would be understood and obeyed as strictly as though it were couched in the language of direction and command."

And the court held that the words used were directory, and that a trust was created in favor of the mother and sister.

In *Knox V. Knox*, 59 Wis., 172, 18 N. W., 155, 48 Am. Rep., 491, the court quotes approvingly from Chief Justice BIGELOW in *Warner* v. *Bates*, 98 Mass., 274, as follows:

"It is suggested that in other clauses of the will in which she creates a trust in favor of her daughters for their respective shares of the estate, of which they are to have the entire income after the death of her husband, she does not use words of entreaty, request, and recommendation, but apt and technical words by which to establish a trust in their behalf. But we think this suggestion not entitled to much weight. She might well express herself in different language when addressing her husband from that which she would use toward strangers, and at the same time intend a similar result. Words of confidence, entreaty, and recommendation, were natural and appropriate when used to express the will of a testatrix who intended to direct and control the conduct of her husband in a matter in which the right to give directions and to control belonged to her. In such case the words used by Lord Loughborough, are applicable: 'When a person recommends to another who is independent of him, there is nothing imperative; but, if he recommends that to be done by a person whom he has a right to order to do it, the mode is only civility.'"

The court then adds: "This language is equally forcible when applied to the case of the husband addressing his wife in his last will."

In *Anderson* v. *McCullough,* 3 Head, 615, the court had for construction a will containing the folling provision:

"I, Robert Wallis, do hereby give and bequeath to my dear wife, Margaret, all my real estate, personal and mixed estate, believing that she will make an equitable distribution of the property, at her death, among our children; as she knows better than any other person what part each of them have already received."

The court said: We are of the opinion that, under the will, the widow took a life estate in the property, with a power or appointment coupled with a trust.

"The position that, by the language of the will, the widow had an absolute and uncontrollable power over the property, is not tenable. The gift is to her, 'believing that she will make an equitable distribution of the property, at her death, among our children, as she knows better that any other person, what part each one of them has already received.' The intention of the testator that the widow, at her death, should distribbute the property equitable amongst the children, is here clearly manifested. According to the current of authorities, these words must be construed to be imperative, and not conferring merely a naked power, which the party might or might not execute, in her discretion. In the case of *Wright* v. *Atkyns,* 1 Turn. & Russ., 157, cited in note to section 1070, 2 Story's Eq. Jur., Lord Eldon says that, in order that words of recommendation, entreaty, or wish, shall be held to create a trust, it is necessary, first, that the words are so used that, upon the whole, they ought to be construed as imperative;

secondlly, that the subject of the recommendation or wish be certain; and, thirdly, that the object or persons intended to have the benefit of the recommendation or wish be also certain. According to this rule, it is clear that a valid trust is here created. The only discretion vested in the widow was in regard to the equality of the distribution.''

In *Anderson* v. *Hammond,* 2 Lea, 281, 31 Am. Rep., 612, the testator by his will after making his wife residuary devisee, and otherwise providing for her, added that it was his "will and desire" that she should pay his nephew "for the purpose of educating him," a certain sum annually commencing at a fixed date until he became of age. The nephew died over two years after that date, but before he came of age. It was held that the legacy was valid and a personal charge on the wife, but ceased on the death of the legatee.

In *Hadley* v. *Hadley,* 100 Tenn., 446, 45 S. W., 342, testator devised a tract of land to each of his sons, but the land had not been surveyed out, and he expressed distrust of this division and said, ''I may have given to one more than I intended,'' and then adds:

''I trust to the sense of justice of my said sons, that if I have given more to one than the other, that they will do right, and authorize my wife, as trustee, to assist them in arriving at justice.''

The court held that these terms created a trust. The court then said:

''Even in cases where it is a difficult matter to determine whether words of recommendation or entreaty are

imperative or not, there is always a tendency to construe them 'as obligatory in furtherance of a result which accords with a plain moral duty on the part of a devisee or legatee, and with what it may be supposed the testator would do if he could control his action.' "

In *Ensley* v. *Ensley*, 105 Tenn., 107, 58 S. W., 288, the testator, after disposing of his property to his wife and two children, said:

"I have spoken of all my property to be divided in this will so far without making any outside bequests. I want to give my wife an executrix's power to give out of my estate, before division, as much as $15,000 bequests to my kinfolks, say, to Melville Williams $5,000 or $10,000, in her discretion, and the balance to some one else who may be needy."

It was held that these words raised a trust in favor of Melville Williams to the extent of $5,000.

Taking into consideration the circumstances under which the will in question was drafted, the relation of the parties, the lack of knowledge on the part of the draftsman in the use of legal terms, and applying thereto the rules announced in the foregoing cases, we are drawn inevitably to the conclusion that, under the provisions of this will, a trust was created in favor of Guy B. Daly and W. L. Daly. As further evidence of this fact, it will be noticed that the testator did not, in the second clause of the will, give her the right to use or dispose of the property at pleasure. In fact, he did not intend by said clause to give her all of his property absolutely, because he stated in the third clause that it did not include his life insurance, which he "desired" to pass

to her under the law. In the fourth clause of the will he "requests" his wife to qualify as executrix without bond. In the fifth paragraph he "desires" that Guy B. Daly have further time if he is unable to meet the notes as they mature, and then says that, if he should be so fortunate as to meet said notes promptly, he "requests" that the last $1,500 be given him. And in the sixth clause of the will he states that it is his "desire" to help W. L. Daly and his family, and therefore "requests" that upon his executing ten notes that a deed be executed to him to the property, and then provides, "Should W. L. Daly decline this offer, then have said tract of land sold and turned back into my estate."

This last direction negatives the idea that upon his death this tract of land passed absolutely into the hands of his widow. He says, in effect I offer this land to W. L. Daly on certain conditions. If he does not accept my offer, then the land (or its proceeds) is to become a part of my estate. In which event, of course, it would be the property of the complainant, under clause 2 of the will.

Then, when it comes to the seventh clause of the will, he "requests" his wife to will a certain sum of money to W. T. Clay, evidently having in mind the idea that the word "request" was imperative, and not having a purpose to make this bequest absolutely directive, in order to counteract the same, he adds:

"If you have it left after all your debts are paid and in your judgment and wisdom you feel disposed."

In clauses 5 and 6 he did not leave the matter to her judgment, wisdom, or discretion.

Then in the eighth clause he says: "All other moneys or real estate you may be in possession of growing out of my estate, it is my desire that you may dispose of same (in a way) that according to your good judgment it will do the most good."

When it came to clauses 5 and 6 of his will, no judgment or discretion was given his wife, but in clauses 7 and 8 she was given a discretion, thus cleraly showing that the testator made a distinction in these several provisions of his will, and we think there can be no question but that the language used in the fifth and sixth clauses of his will was used imperatively.

Since these bequests were made to Guy B. Daly and W. L. Daly conditionally, and not knowing whether they would be able to meet the conditions, the property, of course, had to vest in some one, and his evident intention was to have it vest in his wife as trustee.

The application for a writ of *certiorari* will be denied.