C. H. MASSENGILL, Admr. et al. v. JAMES FOX, et al.

Eastern Section.   December 3, 1927.

Petition for Certiorari denied by Supreme Court, March 3, 1928.

W. D. Lyon and Burrow & Burrow, of Bristol, for complainant.

Jos. A. Caldwell and J. K. Brown, of Bristol, and John F. Blevins, of Blountville, for defendants.

PORTRUM, J.   C. H. Davis, a Methodist preacher, died, while a resident of Sullivan county, in 1922, leaving a will, in which he named his wife Eliza Davis as executrix, and she took his property

either for life, or absolutely, as will be hereafter shown, and died intestate in June, 1925. No children survived, leaving the collateral kin of the husband and the wife to contend for the property. C. H. Massengill, who is connected with a bank, and was the advisor of Mr. and Mrs. Davis, was appointed administrator of the estate of Mrs. Davis, and accepted the appointment, administering the trust for about two years, when he deemed it advisable in order to protect himself and his sureties on his administrator's bond, to obtain a construction of the will of C. H. Davis, in order that it might be determined which class of collateral kin took the property coming from C. H. Davis, and to protect himself from paying the funds to the wrong persons. It was the administrator's contention that Eliza Davis took only a life estate in the property of her husband and held the remainder in trust for certain named relatives, who were designated by the draftsman of 'the husband's will, on the back of an old envelope, and following each name was a figure one, or a fraction. This envelope was probated as a part of the will of C. H. Davis, after the death of Eliza Davis, the original will being probated prior to her death. So, the question presented is one of the construction of the will of C. H. Davis, which reads as follows:

"Last Will and Testament of C. H. Davis, deceased    Prorated Feb. (6) 1922 Term January 24, 1922.

"I, C. H. Davis, make and publish this my last will and hereby revoke all other wills made by me.

I.

"I give all my personal property to my wife, Eliza Davis, and make her executrix of my will and request that she be not required to give bond as executrix.

II.

"I request that she pay all my debts as soon as she can conveniently do so and they shall be the first charge against my estate.

III.

"If she should have any personal property or real property to be disposed of before or at her death I request her to make such disposition of it as will comply with the understanding she and I have about the matter, giving it to the persons and causes named in a paper in her possession and in the proportion set forth therein.

"In witness whereof I have hereunto signed my name this January 24th, 1922.

"C. H. Davis.

"Witnessed by the undersigned persons who signed at the request of the testator in his presence and each other's presence and who heard him declare this instrument to be his last will and testament.

"C. H. Massengill,
"J. W. Jones.

."Paul Fox 1, Martha Davis 1, A. W. Taylor, 1, M. J. Taylor 1, Ada Shook 1, Gladys Aldridge ½, Zetta Aldridge ½, Willie Taylor ½, Harland Taylor ½, Zada Elsea ½, Chas. Taylor 1½, Jennie Bell Taylor ½, Cora Lee Taylor ½, Myra Taylor ½, Nancy Fox —, Nevada Fox ½, Flora Fox ½, Clarence Fox ½, Henry Fox 1, Jim Fox ¼, John Fox 1, Joda Fox 1, Birdie Fox 1, Everett Fox 1, Joe Fox 1, George Fox 1, Mary Jane Fox 1, Bessie Lee Fox 1, John Fox, Jr. 1, Robert Fox 1, Effie J. Fox 1, Chas. Haden Fox 1½, Henry Shook 1, Geo. Shook 1, Jacob Shook ½, Davis Shook ½, Clifford Shook ½, Mary Banner ½, Ben Davis 1, Howard Minnick ½, Grant Gregg ½, Lelia Minnick ½, Naoma Gregg ½.

"300 to be loaned on real estate security and income used to keep up square in graveyard and buy literature for Sunday School Cross M. E. Church and Bethel M. E. Church income on principal as follows:

"100 to Cross Church Sunday School

"Bethel Sunday School $100

"Graveyard $100

"J. L. Fox, et al. ⎤
   v.             ⎬ In the County Court of Sullivan County,
"Jas. Fox, et al. ⎦            . Tennessee.

"This cause coming on to be heard before John H. Caldwell, County Judge, upon the whole record in the cause, oral evidence introduced in court, and argument of counsel, the court is of the opinion and finds:

"That the memorandum offered in evidence as the paper referred to in the will of C. H. Davis, that said paper was in writing and in existence at the time of the will, and has been identified as the paper referred to in the will.

"It is therefore ordered, adjudged, and decreed by the court that the will of C. H. Davis be withdrawn from probate and allowed to be reprobated with said paper as a part of the same.

"Jno. H. Caldwell,
"County Judge."

We are of the opinion that the first and third sections of the will give to Mrs. Eliza Davis an absolute estate, with a gift over; that the two estates are inconsistent, and the limitation over must fail. We do not feel it necessary to go at length into an analysis of the wording of this will. The Chancellor discussed at length this question, as well as ably reviewed the authorities, and his written opinion is attached to the transcript and is concurred in by us, and referred to for a detail analysis of the authorities and the meaning of the wording of the will.

We will content ourselves by saying that the conjunction "if" at the beginning of clause third makes it clear to us the testator intended to vest an absolute estate, that is full power of disposal in

his wife, both to the personal property and real estate. The conjunction "if" is defined by Webster as a condition, also, "on the supposition that,"—allowing that. A clause similar to this is found in the case of Bradley v. Carnes, 94 Tenn., 27, where it is said: "If anything remains at her death, it shall go into the hands of my executor, and he shall divide it," etc. The court in that case held that the first taker was given an estate in fee, coupled with a unlimited power of disposition, and the limitation over was void. The words, "If she shall have any personal property or real estate to be disposed of" are as strong, if not stronger, than "if anything remains at her death."

It is the insistence of the appellant that the sentence in the third clause means that she was given only a life estate in the property, with the power to appoint, as designated in the will, which appointment she might make before or at her death. It is insisted that the words, "to be disposed of before or at her death," make it imperative upon the first taker to dispose of the property in accordance with the understanding, it being insisted that understanding means an agreement, which is binding upon her. We can find nothing in this contention, nor in the wording of the will that destroys the underlying thought conveyed by the conjunction "if," i. e. on condition that she has anything to be disposed of, or the supposition that—allowing that she has anything to dispose of.

It is said a careful reading of the case of Daly v. Daly, 142 Tenn. 242, will convince the court the case is authority for the position taken by the appellant. We have studied this case and do not agree with the appellant. The last clause in the Daly will reads: "All other moneys or real estate you may be in possession of growing out of my estate, it is my desire that you may dispose of same (any way) that according to your judgment it will do the most good." This quotation impliedly says that all other money was not subject to her disposal according to her judgment, and we have no such expression in the will under review. But in the Daly case, Judge McKinney stating the rule, says:

"There are two ways in which property may be devised or conveyed. In the first case, where the conveyance, or devise is coupled with the power of disposition, in which case any condition or limitation, subsequently attached, would be ineffectual. On the other hand, where a party conveys or devises property without such power of disposition, but coupled with the duty to use the property in a certain manner, the condition or limitation would be valid."

We are of the opinion that this case falls in the first instance above quoted, and the limitation over is ineffectual. We are unable to distinguish this case from Eaton v. Nashville Trust Company, 145 Tenn., 575.

The assignments going to the exclusion of parol evidence, given by the draftsman of the will tending to show the acts and purposes of the testator, are overruled, for the reason the evidence was excluded by the Chancellor, and is not made a part of the record by bill of exceptions, or by the method provided by the act which requires the exception and action of the Chancellor to be noted on the margin and signed by the chancellor.

The Chancellor declined to tax as a part of the costs to be paid out of the funds in the hands of the administrator a guardian ad litem fee for representing the interest of minors who were heirs at law of C. H. Davis, in the absence of a fund belonging to the minor. There was no error in this. The courts have held it is the duty of the attorney to render services in like cases without compensation, and, in the words of Judge Wilkes, "He can only rely upon the approval of his conscience here and his reward hereafter, when final judgment is passed for his compensation." Patton v. Dickson, 105 Tenn., 96.

Counsel representing the heirs of Mrs. Davis appeal and assign error to the action of the Chancellor in allowing the administrator counsel fees in the prosecution of this suit. We do not think the Chancellor erred. We appreciate the position of the heirs in seeing the administrator of their intestate's estate take a position contrary to their interest, especially since he joined with himself, the heirs of C. H. Davis, as complainants. But back of it all the administrator had a right to call for a construction of the will of C. H. Davis before disbursing the funds in his hands. He was also draftsman of the will of C. H. Davis, and he thought he had effectuated the purpose he now contends for—that is, the heirs of C. H. Davis take a part of the estate under the will. The question is open to doubt in the mind of one situated as he was, and with the knowledge he had, if he had paid out the funds to the heirs of Mrs. Davis and the court would then have held the heirs of Mr. Davis had an interest in the estate he could hardly have avoided liability. So, we hold this is not a case where an administrator is attempting to contest a purported will of his intestate. It is more analogous to a person holding funds in his hands which are claimed by two people, then the court entertains a bill of interpleader for his protection. For this reason the authorities relied upon in support of the assignment are not in point.

It appears that the administrator joined with him as complainants several of the heirs of C. H. Davis, but the firm of Burrows & Burrows were associated with him and he claims to have represented only the administrator, it appears that he signed the bill as counsel for the administrator only. In view of this fact, and the further fact that the firm of Burrows & Burrows were not allowed a fee in the case, we must conclude the Chancellor compensated him

only for what services he rendered the estate. The Chancellor declined to tax as costs $100 allowed the administrator ad litem for the estate of C. H. Davis. This is assigned as error. We hold the Chancellor was correct in this for the reason that the administrator ad litem was the attorney representing himself as well as the administrator in the case, and it was not permissible to allow one person two fees for the same service. Holding v. Allen, 150 Tenn., 669. There is no showing that the Chancellor abused his discretion in taxing the costs as he did. His decree is affirmed, and the costs of the appeal is taxed one-half against the estate and the other against the heirs of C. H. Davis, who appealed.

Snodgrass and Thompson, JJ., concur.