**Vivian Davis BISHOP, Plaintiff-Appellee,**

v.

**Paul DAVIS and Dee C. Davis, Jr., Defendants-Appellants.**

Court of Appeals of Tennessee, Western Section.

May 15, 1979.

Certiorari Denied by Supreme Court July 30, 1979.

James M. Smith, Decaturville, for Paul Davis.

Harlan Dodson and Harlan Dodson, III, Nashville, for Dee C. Davis, Jr.

James A. Hopper, Savannah, Thomas P. Mitchell, Memphis, for plaintiff-appellee.

EWELL, Judge.

The Complaint in this cause was filed by Vivian Davis Bishop, daughter of D. C. Davis, deceased, and devisee under his will, for a determination of her rights under Item VI and Item VIII of the will. The defend-

ants, brothers of the plaintiff, are Dee C. Davis, Jr. and Paul Davis who is also the executor of the estate of D. C. Davis.

The will was executed on September 7, 1973, and the testator died on October 3, 1977. The pertinent parts of the will are as follows:

## II

I do hereby devise to my son, Paul Davis, all of the balance of the tracts of land known as the Cole Lands and the J. P. Davis Homeplace, located in the 3rd Civil District, Decatur County, Tennessee, excluding from this devise the two tracts of land hereinafter devised to my children, provided however, that the said Paul Davis pay the sum of THREE THOUSAND AND NO/100 DOLLARS_____($3,000.00)_____ as a provision and condition for taking under this devise, as follows: $1,000.00 to Lonnie Davis, $1,000.00 to D. C. Davis, Jr., and $1,000.00 to Vivian Davis Bishop.

## III

I do hereby devise to my son, Dee C. Davis, Jr., and my daughter, Vivian Davis Bishop, that land known as the Stout Place, Bussell Place and the Houston Place, however, excluding therefrom all the land of said tracts lying and being on the East side of Jim's Branch, all tracts are adjoining and located in the 3rd Civil District, Decatur County, Tennessee. This land is to be divided into equal acreage by a competent surveyor, with a line running generally East and West, from a point on the West side of Jim's Branch to a point in the East Margin of the Decaturville-Perryville Road, thereby giving frontage on said road for both said tracts of land thus divided,

I do hereby devise to my son, Dee C. Davis, Jr. that tract of land lying on the North side of said division line to be established.

I do hereby devise to my daughter, Vivian Davis Bishop, that tract of land lying on the South side of said division line to be established.

## IV

I do hereby devise to my son, Lonnie Davis, that tract of land known as the Brock Place and/or Yarbro Place, being all of the land I die seized and possessed of located in the 7th Civil District, Decatur County, Tennessee, and consists of two tracts, containing 72 acres, more or less. I have heretofore conveyed to the said Lonnie Davis a portion of said land by deed; however, notwithstanding the waiver provision of, or contained in said deed, I do hereby devise to my son, Lonnie Davis, the entire balance of said land located in the said 7th Civil District, Decatur County, Tennessee.

## V

I do hereby bequeath to my son, Lonnie Davis, the sum of ONE THOUSAND AND NO/100 DOLLARS_____($1,000.00)_____ to be paid to him as soon after my death as possible by my Executor hereinafter named, out of my personal estate.

## VI

I do hereby give, bequeath and devise to Paul Davis, Dee C. Davis, Jr. and Vivian Davis Bishop, in equal shares, share and share alike, the following described tract of land, upon which the family residence is presently located, same being on the West side of the Decaturville-Perryville Road, in the 3rd Civil District, Decatur County, Tennessee, and bounded as follows:

Bounded on the North by a fence; bounded on the South by a fence, bounded on the East by Decaturville-Perryville Road, and bounded on the West by a fence.

Containing Approximately 1 acre, more or less.

Included in this bequest is all of the household furniture, furnishings, fixtures, etc., at the time of my demise.

I value the same at $12,000.00 and it is my desire and request that Vivian Davis Bishop have the option to purchase the undivided interest of Paul Davis and Dee C. Davis, Jr. for the purchase price of $4,000.00 to each.

## VII

I do hereby give, bequeath and devise to Lonnie Davis the following described tract of land, upon which the concrete block house which he has heretofore occupied together with all furniture, furnishings, fixtures, etc., located on the East side of the Decaturville-Perryville Road, in the 3rd Civil District, Decatur County, Tennessee, and described as follows:

BEGINNING on a stake in the right-of-way of Decaturville-Perryville Road, runs thence East 200 feet to a stake; thence South 200 feet to a stake; thence West 200 feet to a stake in the East right-of-way of said road; thence with said right-of-way North 200 feet to the beginning, so as to include driveway and said concrete block house and supporting improvements.

I value this property at $4,000.00 and have considered same in view of paragraph VI above.

## VIII

It is my desire that all the land I die seized and possessed of be owned by some member of my family, and in the event any devisee herein named should desire or need to sell the land herein devised to them, it is my wish, desire and request, everything being equal, that they sell and convey to another member of my family, or to a descendant of a member of my family.

## IX

After the payment of all debts, taxes and expenses hereinabove provided, and the payment of the special bequest provided in Paragraph V, I do hereby give, bequeath and devise all the rest and residue of my property, real, personal or mixed, and wheresoever situated or located, in equal shares as follows: One-fourth to Paul Davis; one-fourth to Dee C. Davis, Jr.; one-fourth to Vivian Davis Bishop; and one-fourth to Decatur County Bank, Decaturville, Tennessee, as Trustee for the use and benefit of my son, Lonnie Davis, and I do hereby direct my said Trustee to pay my said son, Lonnie Davis, the sum of $150.00 per month, beginning on the first day of the month following the payment of said funds to said Trustee by my said Executor, and monthly thereafter on the first day of each succeeding month until said fund and earnings therefrom have been exhausted or until his death, in the event said trust funds have not been exhausted on the date of Lonnie Davis' death, then in that event the balance of said Trust Fund shall be distributed by said Trustee to the heirs of the said Lonnie Davis. My Trustee hereinabove named shall administer said Trust in accordance with all laws applicable to Trust.

After the probate of the will in the County Court of Decatur County plaintiff tendered to each of the defendants $4,000.00 in cash and demanded from them (1) a general warranty deed conveying to her their interests in the real estate described in Item VI and (2) a bill of sale conveying to her their interests in the household furniture, furnishings, fixtures, etc. located in or about the premises. The defendants declined payment and refused to execute a deed and bill of sale. Plaintiff then filed her Complaint seeking a court order requiring defendants to execute the deed and bill of sale upon payment of $4,000.00 to each. Defendant Dee C. Davis, Jr., responded with a Motion to Dismiss the Complaint because there was no equity on the face of the bill. Defendant Paul Davis filed an Answer insisting that (1) the plaintiff and defendants owned the property as tenants in common; (2) that the provision giving the plaintiff the option to purchase is a request only and not mandatory; and (3) that Item VIII of the will is a precatory provision and not mandatory. With his Answer he also filed a Counter-

claim against the plaintiff and Dee C. Davis, Jr. for partition of the real estate described in Item VI.

The cause was heard by Chancellor Aaron C. Brown upon the pleadings and the oral stipulation of counsel to the following:

(1) The will filed as an exhibit to the original bill was a true and correct copy of the will of D. C. Davis, deceased.

(2) The land was not susceptible to being partitioned in kind.

(3) The plaintiff had tendered the sum of $4,000.00 to both defendants which had been refused.

No evidence was adduced upon the trial of the case. The Chancellor took the matter under advisement and subsequently filed his "Finding" as follows:

The Will executed September 7, 1973, by the testator, when read in its entirety gave the impression of great thought and understanding as to his bounty, his family and his desire to dispose of his property in an equitable and feasible manner. It would appear no one knew the property, the heirs and his idea of what each should receive better than the testator.

The question confronting the Court is contained in Paragraph VI of the Will concerning the words "desire" and "request". It is the contention of the defendants, Paul Davis and Dee C. Davis, that such words are precatory and do not have the testamentary effect of creating obligatory conditions.

The Court feels the words of Lord Loughdorough may have some help in the solving of this issue, "When a person recommends to another who is independent of him, there is nothing imperative; but if he recommends that to be done by a person whom he has the right to order to do it, the mode is only civility." He further added, "this language is equally forcible when applied to the case of the husband addressing his wife in his last Will".

The testator was addressing his children in the entire arrangements contained in the Will. The entire disposition of his property was included and the terms and conditions stated in the whole of the instrument is definitely the intention of the testator.

The Court, therefore, finds the words "desire" and "request" contained in Paragraph VI of the Will relating to plaintiff, "Vivian Davis Bishop", should be construed as imperative and upon her complying with the direction as to payments to Paul Davis and Dee C. Davis, Jr. in the sum of Four Thousand ($4,000) Dollars each, she is entitled to the specific property in fee.

Following the entry of a Decree both defendants appealed insisting that the Chancellor erred in holding that the language in Item VI was mandatory, imperative or obligatory and not merely precatory.

■ Since this case is before us on the technical record only, the will must be construed from its language alone without resort to extrinsic evidence. It is axiomatic that in the construction of wills the courts will ascertain, if possible, from an examination of the whole instrument, the intention of the testator, and when this is ascertained it will be carried out, unless it countervails public policy or some established rule of law. *Hadley v. Hadley*, 100 Tenn. 446, 45 S.W. 342 (1898); *Moore v. Neely*, 212 Tenn. 496, 370 S.W.2d 537 (1963).

In the case of *Robertson v. Brown*, 13 Tenn.App. 211 (1931) the Court of Appeals, Middle Section, quoted with approval Section 455 of *Sizer's Pritchard on Wills and Administration*, relating to precatory words. That section is carried forward in *Phillips' Pritchard Law of Wills and Administration of Estates* in which the applicable law is concisely summarized as follows:

It has been frequently held, especially in the earlier cases, that the expression of a wish or desire on the part of the testator, accompanying a devise or bequest, that a particular application shall be made of the property, is *prima facie* considered obligatory, and creates a trust unless an intention appear to the contrary. Thus, if a testator gives $1,000 to A.B., desiring, wishing, recommending,

hoping, entreating, or believing that A.B. will at his death give the same or some certain part of it to C.D., it is considered that C.D. is an object of the testator's bounty, and that A.B. is a trustee for him. But in order that words of recommendation, entreaty or wish, when used in a will, shall be held to create a trust, it is necessary, first, that the words be so used that upon the whole they ought to be construed as imperative; secondly, that the subject of the recommendation, entreaty or wish be certain; and, thirdly, that the objects or persons intended to have the benefit of it be also certain. Where there is sufficient certainty of subject and object, the real question in every case is whether the expression of the wish or recommendation by the testator was meant to control the conduct of the person to whom it is addressed or was merely intended to indicate what he supposed would be a reasonable exercise of the discretion of such person, without intending to control it.

In the more recent decisions there has been a change in the trend of authority as to the force of precatory words. The natural significance of precatory words is not a trust, and the words "request", "desire", and the like will be construed as a request, not a command, unless the intention of the testator is clear that a command is intended.

■ The modern trend with regard to precatory words brings us to again to the fundamental consideration of the testator's intent. The Chancellor found that the testator intended that the words "desire" and "request" as used in Item VI of the will be imperative. We agree.

From a reading of the will as a whole it is apparent that the testator gave careful consideration to the manner and means of dividing his estate among his four children. He had a definite opinion as to the value of each parcel of real estate, and his mode of disposition of the real estate related directly

to his valuations. (See Items II through VII). It is also clear that he preferred that his land remain in the family. (See Item VIII). It is reasonable to assume that this desire would have been particularly strong in relation to the family residence and its contents.

Based upon the language of Item VIII [1] and the fact that both the subject and object of this item are general and broad rather than specific and certain, we conclude that the testator intended this portion of his will to be a request, not a command. With respect to Item VI we find the situation to be substantially different, and we conclude that the testator intended to give his daughter the absolute right to purchase the family residence and the contents thereof for $8,000.00 if she so desired. It is obvious that he thought this disposition in relation to other portions of the will would be fair and equitable as to all his children, and he must have been aware of the impracticality of three children continuing indefinitely in joint ownership of the family residence and one acre of land.

We recognize the difference in the approach used by the testator in Item II as compared to Item VI. Appellants argue that this difference indicates the testator intended the last paragraph of Item VI as a request only, otherwise he would have handled Item VI in the same manner as Item II. We do not agree. From this difference we conclude that the testator was certain that his son, Paul, would pay $3,000.00 in exchange for the land described in Item II while there was some question in his mind as to whether or not his daughter, Vivian, would want absolute ownership of the home place and the contents at a cost of $8,000.00.

Appellants also complain that the holding of the Trial Court permits the plaintiff to acquire real estate in 1978 at 1973 prices. The will was executed in September, 1973, and the testator died in October, 1977. We have no proof before us comparing 1973 values to 1977 values, but we consider it

1. We specifically note the use of the word "wish" and the phrase "everything being equal".

significant that the testator over a period of more than four years did not modify his will in any way. If, because of inflation, there was a general increase in real estate values, it follows that appellant, Paul Davis, secured a like benefit under the terms of Item II and that Lonnie Davis was similarly affected under Item VII. It is equally reasonable to assume a decrease in the value of the dollar over the same period of time, and this change worked to the detriment of Lonnie Davis under Item V and Lonnie Davis, Dee C. Davis and Vivian Davis Bishop under Item II as well as Paul Davis and Dee C. Davis, Jr. under Item VI. Therefore, changes in real estate values and economic conditions from the date of execution of the will to date of death are meaningless in our efforts to determine the testator's intent in the use of the language contained in the last paragraph of Item VI.

If this language is not mandatory, it follows that the Counterclaim of Paul Davis for partition has merit. The parties stipulated that the land was not susceptible to being partitioned in kind. Partition could be accomplished only by sale and a division of the proceeds. We think it is reasonable to assume that the testator foresaw this possibility and sought to avoid a public sale of the family residence, possibly to a stranger, by the inclusion of the last paragraph of Item VI in his will. To hold that this language constitutes a request only is to hold that the testator, in leaving the family residence and one acre to three of his children jointly, created a situation which would likely result in the defeat of the desire most prominently expressed in his will.

We find no case directly in point. We do find support, however, in the case of *Daly v. Daly*, 142 Tenn. 242, 218 S.W. 213 (1920) in which the Supreme Court construed the will of Thomas E. Daly. Daly, after giving all of his estate "both real and personal of whatever nature" to his wife, provided as follows:

I have remaining in the old home place in District No. 1 about near 200 acres of land where W. L. Daly and family now live.

I value this place at five thousand dollars ($5,000). It is my desire to help W. L. Daly and his other heirs (except Guy B. Daly) provide themselves a home; therefore I request that if the said W. L. Daly wants to secure this place, I suggest that when he executes ten non-interest bearing notes due respectively 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10 years from date, then you can make him a deed, otherwise should W. L. Daly decline this offer, then have said tract of land sold and turned back into my estate.

Following an excellent discussion of the applicable authority, the Supreme Court affirmed the Trial Court and the Court of Civil Appeals in holding that the language in question was used imperatively and in requiring Mrs. Daly to convey to W. L. Daly the property in question upon receipt of the ten notes. The language used by D. C. Davis was as strong as that of Thomas E. Daly, and the Chancellor did not err in holding that it was used imperatively.

The assignment of error is overruled and the Decree of the Trial Court affirmed. The costs of appeal are assessed against the appellants and their sureties.

MATHERNE and NEARN, JJ., concur.