NicholsoN, C. J.,
delivered the opinion of the court.
This bill was filed to have a construction of the will of Samuel R. Rodgers, who died in Knox county in 1866. Many years before his death he had written his will and signed it, and at a later period, probably, he had written and signed a codicil to his will, but no date is given in either the will or codicil, and it is only from extraneous facts that any approximation to the date of either can be made. In the construction, however, the date is not a very material fact.
The will and codicil being both in the handwriting of the testator, without witnesses, and found among his valuable papers, were admitted to record under the provisions of the law as to the probate and recording of such wills. He made provision for his mother and two sisters, all of whom died before he did. He devised real estate which he had disposed of before his death. He had three living brothers and one who *493 was dead, having four children at the time of testator’s death.
The main question in the case arose between the three brothers, who were living at testator’s death, and the children of his deceased brother.
After making provision for his mother and sisters, testator devised his two houses and lots to his two sisters during their natural lives, and to the survivor of them, and “at their death said real property to be sold, and the proceeds to be divided among my brothers, if living, and if dead, to their children, in which I embrace the children of my deceased brother, Alexander Rodgers. I mean that the remainder shall go equally to all my brothers and their children, as of those now living as those dead.”
He gives a legacy of five hundred dollars to his niece, Virginia Rodgers, “to be paid out of any money on hand; the balance of money on hand is to be kept at interest for my mother and sisters, and at their death to be divided as before stated among my brothers and their children.” He then concludes: “And all my other property I give and bequeath to my sisters, with the qualifications above made.” At the bottom of the will, after his signature, the testator added the following:
“ I give and bequeath to each of the children of Dr. A. R. Rodgers one hundred dollars, to be paid out of my estate as soon as convenient,” which was signed and sealed, but without date.
Complainants are the children of Dr. A. R. Rodgers, and they claim that under the will they are en *494 titled to one-fourtb of the estate of the testator, and in addition thereto, they claim the $100 each. The three brothers, or their children, claim that the codicil to the will revokes that portion thereof which gives to A. R. Rodgers’ children an equal share of the estate, and that they are only entitled to the $100 each.
This statement of their respective claims presents the first question for determination. Two of the brothers of Sam. R. Rodgers, viz., ¥m. Rodgers and Thomas Rodgers, were living when the bill was filed — the other being then dead. ¥m. and Thos. Rodgers answer the bill, and admit most of the allegations as to the making of the will and codicil, the death of testator’s mother and sisters, and the provisions of the will and codicil, and ask their construction by the court. They say that the $100 has been paid to each of the children of A. R. Rodgers, and that the payments were made under the belief that this was all to which they were entitled. They stated that being of opinion that the estate, after the specific legacies were satisfied, was to be equally divided among the three brothers. They entered into an agreement to that effect, and settled among themselves without for.mally executing the will according to its provisions.
They give their reasons for believing that the testator changed his purpose as to giving the children of A. R. Rodgers an equal fourth of his estate. They say that he was an ardent and enthusiastic Union man during the war, and that he was offended with A. R. Rodgers’ children because they were rebels, and on that account he determined, and so frequently *495 said, that they should have none of his property. They also rely on the dying declarations of the testator, which were written down by one of the defendants fonr days after his death, and procured to be spread upon the minutes of the County Court, which statement is sworn to as being true. By this statement testator directed his three brothers, who were all present, how he wanted his property to be disposed of, and after specifying certain articles of property and telling who should have them, he added: “I wish you,” addressing Thomas Rodgers, John Rodgers and Vm. Rodgers, “to take the balance of my property and divide it between you without hard feelings.”
Defendants rely on these declarations of the testator as evidence that he had changed his purpose in regard to giving the children of his brother A. R. Rodgers an equal share of his estate, and as indicating that it was his intention, by his codicil, to revoke so much of his will as had given them such share.
The parties went to trial on bill and answer, and according to a well settled rule of chancery pleading and practice, “ the answer is to be considered true in all points, and when the defendant states that he belives and hopes to be able to prove such and such matters, they are considered as proved”: Brinkerhoff v. Brown, 7 John. C. R., 222. It is not meant by this rule that the legal deductions insisted on in the answer are to be considered as true, but only such matters of fact as are stated in the answer by way of defense, or evidence of the equity set forth in the bill.
*496 In the present case it is to be considered as true that the testator expressed himself as dissatisfied with the children of his brother, A. R. Rodgers, because of their being considered rebels, and that he expresed his determination that they should share none of his bounty. It is also to be considered as true, that on his death-bed he made declarations which indicated that he wanted his property divided among his three brothers, and that he indicated no purpose that A. R. Rodgers’ children should have any portion.
But notwithstanding this change in his purpose as to A. R. Rodgers’ children, and notwithstanding his perfect right, for the reasons assigned, or for any others, to revoke his former action on the subject, yet he did not carry out his new purpose by destroying his old will or by making a new one, but after his death, his old will was found among his valuable papers, and has been set up, and recorded as the legal disposition of his property. It is clear, therefore, that the matters set up in the answers do not in law amount to a revocation of the original will. Nor is it contended that the dying declarations of the testator constituted a nuncupative will, which could operate as a revocation of the written will. It was not reduced to writing in the life-time of the testator and read over to and approved by him: Code, s. 2167.
But it is said that in ascertaining the intention of the testator, the matters stated in the answer, and which indicáte the change in testator’s feelings towards complainants, may be considered in determining the proper construction of the codicil. It is well settled *497 that in doubtful cases, it is proper to look into the situation and circumstances of the parties, in order to ascertain the intention: Henderson v. Tardy, 10 Yerg. 34. It is proper also to search for the intention of the testator, by examining and collating other clauses, as well as that immediately under consideration.
In the original will, the testator expressly embraces the children of his brother Alexander, as equally objects of his bounty with his other three brothers. The second shows that his brother Alexander had died in 1846, leaving four children in the State of Alabama, three daughters and one son. His other three brothers were living in his neighborhood, as we may infer from the record. At the time of writing his will he had no preferences, but desired them all to share equally. Afterwards, (but when, it does not appear) he adds to his will, “ I give and bequeath to each of the children of Dr. A. E. Eodgers $100, to be paid out of my estate as soon as convenient.”
It is argued that, viewed in the light of the matters stated in making this addition to his will, testator was carrying out the purpose indicated by the declarations of his dissatisfaction with complainants because of their politics. But there are two difficulties in the way of this inference. First, respondents say'in their answer that “the testator, who was an ardent and unflinching .Union man, frequently expressed his determination to do nothing for (to use his own expression) his rebel kin, and often alluded to the fact that the sons of the said Alexander were rebels, and several of them in the rebel army.” But ac *498 cording to the record, Alexander Rodgers had but one son, and his other children were daughters. It is scarcely to be supposed that expressions like these could have been made seriously and deliberately, as indicating any fixed purpose to cut off his dead brother’s daughters, because they were rebels or had a rebel brother. But in the second place, it is not known at what time testator made the addition to the will. If we knew that it was made after he had become estranged from complainants on account of their politics, it might be argued that he meant by the codicil to indicate that change in his feelings and purposes. But until we are informed as to the surrounding circumstances existing at the time he wrote his codicil, we can not assume that it was written after the expressions of dissatisfaction detailed in the answers. Nor are we able to draw any assistance, in collecting the meaning of the codicil, from testator’s dying declarations. The codicil had been written before these declarations were made, and we can not doubt, if the testator was then in his proper mind, that he must have known that he had a will among his valuable papers, which would control the distribution of his estate, notwithstanding the verbal wishes he was expressing. He had but to have his will looked up and destroyed and another prepared, to have his wishes carried out. We can not doubt that the testator, being then one of the chancellors of the State, understood these matters perfectly. The fact that he was content to make declarations without doing more, in our view, detracts greatly from the weight of this evidence.
*499 We are reduced then to the necessity of relying upon the language of the will, and of the codicil, in determining the testator’s intention. There is no ambiguity in the language of the codicil, when considered by itself. It is a plain, clear expression of the testator’s intention to give to each of A. R. Rodgers’ children $100, and they are to have the money as soon as convenient. These latter words are significant. These absent children of his deceased brother are not only to have this amount, but he is so solicitous about them that he directs it to be paid over promptly. By the will, these children were to have an equal share, but they could not receive it until after the death of the testator’s mother and sisters. By the codicil, they were not to wait for these events, but to have $100 each as soon as convenient. "Was the codicil intended by the testator to be a revocation of, or substitute for, the bequest in the will, or as cumulative to that bequest, or as only a repetition thereof pro tanto ? In regard to the question of the codicil being a revocation of the bequest in the will, the rule, as stated by Mr. Jarman, vol. 1, p. 160, and approved by this court in Brown v. Cannon, 3 Head, 357, is, “not to disturb the dispositions of the will further than is absolutely necessary for the purpose of giving effect to the codicil.” In the present case, it is not necessary to disturb the general bequest in the. will to the children of A. R. Rodgers in order to give effect to the special bequest in the codicil. There is no real conflict between the will and the codicil, and therefore the bequest in the *500 codicil was not intended as a revocation of, or substitute for, the bequest in the will. But the question next arises, was it intended to be cumulative to the bequest in the will, or only a repetition of it pro tanto ? Mr. Bedfield, vol. 2, p. 508, says: “ When the legacies are not of the same amount, or not given in the same instrument — one being given in the will and the other in the codicil, or both given in different codicils — the presumption is they were intended to be cumulative, and the legatee will be entitled to both, unless there is some competent ground to infer a different intent on the part of the testator.” The difficulty is in fixing upon some definite rule for determining the quantum of evidence which will suffice to rebut the primary presumption in such cases. Mr. Bedfield says, on p. 510: “Although the general presumption that the gifts were intended to be cumulative will prevail in the absence of all grounds of contrary presumption, it is evident that slight evidence of a contrary purpose in the mind of the testator will induce the court to adopt such a conclusion. And some of the more recent cases seem to incline to the conclusion that the mere repetition of the legacies before given in the will or codicil, in an additional codicil, ought not, in itself alone, to form any sufficient ground to allow both.”
It is competent, by extrinsic evidence, to show the condition and circumstances of the testator and his family, and those in position to expect his bounty, or named in his will; but not to give direct evidence by means of declarations of the testator, or by proof *501 of bis conduct, to show in what sense he intended the words of his will to be. received: 2 Redf. Wills, 514. The result of all the authorities may be stated to be, that notwithstanding all the nice distinctions which have been taken by the courts on the subject, we must come at last to the plain common sense question, what was the intention of the testator, as indicated by his language, viewed in the light of surrounding circumstances: Jones v. Creveling, 4 Harrison, 127.
We start out with the presumption that the testator intended by the bequest of $100 each “to his brother Alexander’s children, that this bequest should be cumulative. Viewing his language used in his will and his codicil in the light of surrounding circumstances, is this presumption rebutted? By the language of the will, testator plainly intended the children of his brother Alexander to have an equal share of his estate; and by the language of his codicil 'he intended them to have $100 each, to be paid as soon as convenient. When we look to the surrounding circumstances, we see that when the will was written testator’s mother and sisters were living; that they were to have the use of his property while they lived, and that the division, in. which his - brother Alexander’s children were to have an equal share, was not to take place until 'after the death of his mother and sisters. Whether the codicil was written before or after the death of his mother and sisters we can not tell, as it has no date. But as there is nothing indicating the precise time of the writing of either the *502 will or the codicil, we must look to the language of the codicil to see if there are any words there enabling us to determine whether it was written before or after the death of testator’s mother and sisters. The language is, that he wants the $100 paid to his brother Alexander’s children “as soon as convenient.” These latter words seem to indicate that he did not wish this bequest to await the general division, which was not to take place ✓ until the death of his mother and sisters. Hence, we infer that when the codicil was written testator’s mother and sisters were living. In this fact we discover a reason for making the codicil. His brother Alexander had died, leaving children. Testator did not desire them to be delayed until the general division, as their situation as minors might require earlier assistance. Hence, we infer that the codicil was intended to enable these children to anticipate $100 each of their share of his estate by receiving that amount immediately after his death, and not to have to wait until after the death of his mother and sisters. We arrive at this conclusion because we see nothing in the will indicating a purpose to depart from the rule of equality of division expressly laid down in his will, and nothing in the surrounding circumstances which indicates any such change in his original purpose.
As to the clauses in the will itself, of which a construction is sought, we are satisfied that the Chancellor has given to them their proper interpretation. The testator meant that his property was to be divided equally among his living brothers and the *503 children of his deceased brother, or brothers — the children of each of his deceased brothers to take one share, equal to the shares, respectively, of the living brothers.
The decree of the Chancellor dismissing the bill will be reversed, and a decree rendered here declaring the rights of the parties. The cause will be remanded for further proceedings. The costs of this court will be paid by defendants.