CANNON v. EWIN et al.—77 S. W. (2d) 990.

Middle Section.    August 8, 1934.

Certiorari denied by Supreme Court January 12, 1935.

W. J. Smith, of Franklin, for complainant Newt Cannon, Jr.

Wirt Courtney, of Franklin, for defendant and cross-complainant Ben D. Ewin, Sr.

Trabue, Hume & Armistead, of Nashville, for defendant and cross-complainant Nashville & American Trust Co.

DeWITT, J. Mrs. Sue P. Allen, widow of B. B. Allen, died testate leaving a large estate. She had no children, and her nearest relatives were two half-sisters and two half-brothers, but at the time of her death, two half-sisters and one half-brother were surviving. This half-brother was the defendant and cross-complainant Ben D. Ewin, Sr. He had no estate or income. Mrs. Allen's will contains the following:

. "I give and bequeath to my brother Ben R. D. Ewin the sum of Seven Thousand ($7,000) Dollars."

The will was executed by her on March 27, 1923. At that time she was surety on notes of her said brother aggregating $6,675. On October 15, 1926, she paid all these notes off. He executed a note to her for $6,970, and he paid interest on it for four months. The note was among the assets of Mrs. Allen at the bank at the time of her death. With interest it amounted to approximately $7,000. Mr. Ewin testified in answer to a question on cross-examination that he gave this note to Mrs. Allen upon his own suggestion, that she did not want to take it, and would not take it until he insisted upon it. His testimony to this effect on his original examination was objected to and the objection sustained; and this testimony was given on cross-examination in response to questions asked. The executor refused to pay him the amount of the bequest, insisting that it should be applied on the note.

The original bill in this cause was filed by Newt Cannon, Jr., claiming as creditor of Ben D. Ewin, Sr., to subject the proceeds of the legacy to the payment of his claim. The Nashville & American Trust Company, executor, resisted such appropriation of the legacy on the ground that Ewin owed his sister's estate the note of $6,970, with interest, equal in amount to the legacy, and therefore he was not entitled to have the legacy paid to him. Ben D. Ewin, Sr., filed an answer and a cross-bill in which he denied liability, set up the defense that his sister had given to him. the note, and also "that it was the true intent and purpose of his said sister to bequeath him the sum of $7000 free and clear of any claim or encumbrance; that on divers occasions and to divers persons, after the payment of said note by her and prior to her death, she stated that said note had been discharged; that the sum thereby expended by her was a gift; that said note was not to be held against this cross-respondent in any wise, nor was he to be held accountable or responsible for the payment of same or any part thereof, as she did not desire to show a preference to other members of the family who had been given large sums of money without being required to pay same."

A jury was demanded and issues were made up by all of the parties under the direction of the court. The first three issues related to the question whether or not Mrs. Allen had, during her

lifetime, made a gift of the aforesaid sums to Mr. Ewin and in effect canceled the note. The fourth issue submitted to the jury was as follows:

"Was it the intention of the said Mrs. Sue P. Allen to leave the said Ben D. Ewin, Sr., the legacy in her will free, clear and unimpressed, by any claims or demands of her estate upon Ben D. Ewin, Sr.?"

The jury answered all of these four issues in favor of Ewin. A decree was entered sustaining the answer and cross-bill of Ben D. Ewin, Sr., and ordering that the executor pay to him the sum of $7,000 in the administration of the estate, free from any claim or offset by reason of his note for $6,970 of October 15, 1926. It was specifically declared in said decree that this note was in the lifetime of Mrs. Allen canceled and in effect delivered up to her said brother and was merely held by the Nashville & American Trust Company as agent for Ben D. Ewin, Sr. The language of the decree, fully sustaining the cross-bill, fairly includes the finding on issue No. 4. This issue was directly responsive to the issue tendered by the aforesaid paragraph of the answer and cross-bill of Ben D. Ewin, Sr., to the cross-bill filed by the executor. The executor made no objection to the issues as made up and submitted to the jury, and where a case is tried on the theory that certain issues have been formally raised, it cannot be objected for the first time on appeal that such issues were not in fact joined by proper pleadings. 2 R. C. L., 81, and cases cited.

We hold that the fourth issue was a material issue, proper to be submitted to the jury, although it involved a mixed question of law and fact; that it was not outside of the scope of the pleadings. We further hold that the decree sustaining the cross-bill of Ben D. Ewin, Sr., was not based solely upon the cancellation of the note during the lifetime of the testatrix, but was also based upon the finding upon this issue No. 4, which fairly presented the question whether or not it was the intention of the testatrix to release the debt in making her bequest of $7,000 to her said brother. The executor contends that evidence of extrinsic facts and circumstances was inadmissible to show that Mrs. Allen intended by her bequest to cancel the debt and in addition to give to her brother the sum of $7,000. A rule is invoked that where such intent does not clearly appear on the face of the will the mere bequest does not operate to release or extinguish the debt. This is a general rule; but the fundamental and controlling rule to which all others are subordinate, with a few exceptions, in the construction of wills, is to ascertain the intention of the testator, and, having ascertained that intention, whatever it may be, if it is lawful it should be carried out.

In Adkisson v. Adkisson, 4 Tenn. Civ. App., 453, it is said (per Mr. Justice Wilson):

"While this intention of the testator is to be gathered from what is found within the four corners, within the lids of the instrument; that is, from the particular words used in the will, their context, and the general scope and purpose of the instrument. Hadley v. Hadley, 100 Tenn., 446 (45 S. W., 342); East v. Burns, 104 Tenn., 169-183 (56 S. W., 830); Dixon v. Cooper, 88 Tenn., 177 (12 S. W., 445); Williams v. Williams, 10 Yerg., 20, 21; Lynch v. Burts, 1 Heisk., 600-604; Armstrong v. Armstrong, 4 Baxt., 357-359, yet this rule does not preclude courts from hearing parol testimony that will enable them to put themselves as near as possible in the situation of the makers of the wills whose language is to be interpreted; such, for instance, as shows the state of facts under which the wills were made, the situation of the properties of the testators, the members of their families and other relevant or cognate facts. Pritchard on Wills, section 499; Schouler on Wills, section 466; Gannaway v. Tarpley, 1 Cold., 572; Bunch v. Hardy, 3 Lea, 544-547; Ballentine v. Wright, 7 Lea, 26-30; Hottell v. Browder, 13 Lea, 676-679; Dixon v. Cooper, supra; East v. Burns, supra. We need only observe, in this connection, that the testator's intention, as disclosed by the language of his will when read in the light of the facts and circumstances surrounding him at the time of its execution, will not be set aside or disregarded by proof aliunde, showing, however, clearly a different intention on the part of the testator."

This rule admitting parol evidence for this purpose was specified as adopted and applied in many of our cases, although there is also a general rule that parol evidence is inadmissible to contradict, add to, or explain a will where there is no ambiguity on its face. Clark v. Clark, 2 Lea, 723; Horton v. Thompson, 3 Tenn. Ch., 581; Weatherhead v. Sewell, 9 Humph., 272; Gourley v. Thompson, 2 Sneed, 387, and other cases. A strict rule is applied in the interpretation of a will which on its face discloses the intention of the testator; that the intention that controls in the construction of a will is that intention which is expressed in the will or fairly inferable from its terms; that the court will not give effect to an intention, though morally certain that it existed in the testator's mind, unless it has found expression in his will. This rule was declared and applied in Fox and Wheatley v. Fox, 102 Tenn., 77, 50 S. W., 765, 767, the court saying:

"The question is not what the testator intended in his mind, but what is the meaning of his words and his intention, as shown by them."

In such case the only question is what the language shows to have been the testator's intention. Parol evidence is simply inad-

missible to show a different intention from that expressed in the will. This doctrine was declared in the recent case of Martin v. Hale, 167 Tenn., 438, 71 S. W. (2d), 211, in the opinion by Mr. Justice Chambliss. It may be harmonized with the admission of extrinsic evidence in other cases upon the theory that in those cases the intention as to the question involved is not shown in the will. It cannot be doubted that the will of Mrs. Allen shows on its face a clear intention to give to Mr. Ewin the sum of $7,000. The question whether or not she intended to release the debt by canceling the note arises from extrinsic evidence produced by the executor, who sued by cross-bill to recover upon the note. It insists that an obligation upon the note presents a claim apart from the bequest, although the bequest should be given effect; in other words that the legacy should be subjected to the payment of the note. The will does not express affirmatively any intention other than the mere intention to make the bequest of the sum therein named. We have, therefore, a legacy of money and a note for an amount approximately equal thereto. May we consider the extrinsic evidence, together with the will itself, in order to determine the true intention?

In Rickets v. Livingston, 2 Johns. Cas. (N. Y.), 97, 1 Am. Dec., 158, it was said by Judge Kent:

"The general disposition of the equity courts is in favour of the efficacy and absolute nature of legacies. A legacy naturally implies bounty or benevolence and it is, prima facie, to be presumed absolute. Mosely, 300; 3 Atkyns, 97; 1 Brown's Civil Law, 304. The courts, accordingly, lean against considering a legacy as payment, even of a debt, for as far as a legacy is applied to pay a debt, so far it is no legacy. It is making it a payment, instead of a gift. 1 P. Wms. 299, 408; 1 Salk., 155; 3 Woodd., 538; 1 Bro. C. C., 129; 2 Fonb., 320."

In Baily's Estate, 153 Pa., 402, 26 A., 23, involving a bequest of an amount much less than the legatee's debt, the will being silent on the subject of intent as to release of the debt, it was said:

"The intention referred to may be gathered from the will itself; and, in the absence of any clearly-expressed or implied intention in the will, evidence thereof dehors the instrument may be re sorted to."

In Woodruff v. Migeon, 46 Conn., 236, it was held that a knowledge of the relation which existed between the testator and the legatee may enable the court to see more clearly what was in the mind of the testator at the time the will was made.

This rule admitting parol evidence is applied in doubtful cases, because of the extreme necessity of ascertaining the real intention of the testator. See, also, Ensley v. Ensley, 105 Tenn., 107, 58 S. W., 288; Young v. Cavitt, 7 Heisk., 24; Rodgers v.

Rodgers, 6 Heisk., 496; Chaffin v. Gullet, 2 Sneed, 275; Henderson v. Vaulx, 10 Yerg., 34; Union & Planters Bank v. Alsobrook, 6 Tenn. App., 264. We are of the opinion that as to the bequest to Ben D. Ewin, Sr., whether or not it was intended as a gift in addition to the cancellation of the debt, a doubtful question at least is presented. If Mrs. Allen did not intend to release the debt, why would she give with one hand and take back with the other? Why would she adopt the device of giving to the debtor the amount of the debt, with the intention that the legacy would be paid and then handed back to pay the debt? Why did she not simply bequeath to her brother a cancellation of the debt without specifying a gift to him in money?

This very question was deemed very material in Holmes v. Holmes, Administrator, 36 Vt., 525, involving a devise to a daughter of the testator whose debt was evidenced by a note acknowledged by the testator at the time of his death. The devise was of a farm without mentioning the debt. The court admitted parol evidence to show the relation which the testator sustained to his debtor, and the circumstances surrounding him. The court said:

"But if the testator did not intend this devise to have the effect to release the orator's debt, and intended to preserve it to be collected by his representatives, how came he to make the devise to the orator at all? All the right he had against the orator, was to have payment of his debt, and when that was done, the farm belonged to the orator. It may well be inferred from the fact that he took a conveyance of the orator's farm to secure this large debt, and had held the title for so many years, that this farm constituted the main property of the orator, and his only means for paying so large a sum. Would it be natural or reasonable that the testator should surrender his security, which was ample and safe, and leave his representatives to getting payment out of the land by attachment, and other legal process?"

Mr. Ewin had no property. He was insolvent and bankrupt. Why Mrs. Allen would bequeath to him the amount of the debt and then just expect her executor to withhold it for payment when she could more simply bequeath to him a cancellation of the debt, is at least very difficult to understand. In this situation parol evidence is surely admissible to explain the intention in the light of the facts and circumstances. The case therefore comes within the rule that a legal presumption of intention not to discharge a debt, which arises from a naked legacy being given to the debtor, may be rebutted by extrinsic proof. 28 R. C. L., 299; Woerner on the American Law of Administration, vol. 3, p. 1528.

In Eden v. Smyth, 5 Ves., 355, this doctrine was announced by Lord Loughborough, the Lord Chancellor, involving this very question of release of a debt under a legacy to the debtor.

It was held that as the will manifestly did not express clearly the whole intention of the testator, parol evidence should be received to show the intention. This rule was adopted in Zeigler v. Eckert, 6 Pa., 13, 47 Am. Dec., 428. See also, Daugherty v. Rogers, 119 Ind., 254, 20 N. E., 779, 3 L. R. A., 847, and notes thereto. In Zeigler v. Eckert, supra, it was held that a legal presumption of intention not to discharge a debt, which arises from a naked legacy being given to the debtor, may be rebutted by extrinsic proof, and as this presumption may be removed by parol evidence, it may be restored by the same kind of evidence; therefore, parol proof of the testator's intention to release the debt constitutes a good defense to an action brought by the executor to recover it. The court said that it is certain that the chancellor would not admit parol evidence to control the will; nor do we here look to such evidence to control the will, but merely to interpret it in the light of extrinsic facts which tend to show the intention. That case was decided upon evidence of declarations made by the testator. We do not look in this case to declarations shown to have been made by Mrs. Allen, for these are inadmissible under the rule declared in Weatherhead v. Sewell, supra, and Gourley v. Thompson, supra, and other cases, but we look to the circumstances disclosed by evidence which we deem competent.

The evidence shows that Mrs. Allen had very great fondness for her brother; that he was bankrupt and unfortunate and she was abundantly able to give him help. It shows a great consideration of his circumstances on her part. She was as devoted to him as if he were her son. She made bequests of $15,000 each, to other persons of whom she was no more fond than she was of her brother. The amount of the debt and the amount of the legacy aggregate a sum nearly equal to each of these particular bequests. She made no effort to collect the debt. She had no reason to think that her brother could ever pay it. We are of the opinion that the jury could conclude reasonably from this evidence and from the will that it was the intention of Mrs. Allen in making the bequest to her brother of only $7,000, when others no nearer in her affections were given $15,000 each, to release and cancel the debt, treating it as an advancement already made to her brother. It is true that the will was executed in 1923 and Mrs. Allen did not pay the debt for her brother and take the note in question until 1926; but at the time of the execution of the will she was a surety or indorser for her brother in the amount of the note which she afterward took, and she knew that she was going to have to pay those debts; therefore we deem it immaterial that the note was not executed by Ben D. Ewen, Sr., for several years after the will was executed. The jury could reasonably infer that she had in mind

at the time of the execution of the will the fact that she would have to pay those debts.

CROWNOVER, J. (dissents). Newt Cannon, Jr., filed the original bill in this cause against Ben D. Ewin, Sr., and the Nashville & American Trust Company, executor of the estate of Mrs. Sue P. Allen, deceased, to collect certain notes executed by Ben D. Ewin, Sr., to the National Bank of Franklin, from which bank he had purchased same. And he sought to have the proceeds of a $7,000 legacy given to Ewin by his half-sister, Mrs. Sue P. Allen, in her last will, applied to his indebtedness.

The Nashville & American Trust Company, executor, resisted the appropriation of the legacy on the ground that Ewin owed his sister's estate a note of $6,975, with interest, equal in amount to the legacy, and therefore the estate owed him nothing.

The executor filed a cross-bill seeking a decree in its favor on said note, and asked that the legacy be appropriated to the payment of the decree on the note.

Ben D. Ewin, Sr., filed an answer and a cross-bill in which he denied liability, and set up the defense that his sister had given him the note, and asked that it be declared null and void and ordered to be canceled, and asked for a decree for the legacy.

The executor answered denying that the note was given to defendant Ewin, and insisted that the note was a valid obligation, and that the amount of the legacy should be offset against the note.

A jury was demanded, and the following issues were submitted and answered in the affirmative by the jury:

"Issue No. 1: When Mrs. Sue P. Allen paid off certain notes for Ben D. Ewin, Sr., totalling $6,975, on or about October 15, 1926, was this transaction in the nature of a gift to said Ben D. Ewin, Sr., by said Sue P. Allen?

"Issue No. 2: With respect to the note of $6,975 dated October 15, 1926, executed by Ben D. Ewin, Sr., to Mrs. Sue P. Allen, was same cancelled by the said Mrs. Sue P. Allen and in effect delivered up by her to the said Ben D. Ewin, Sr., prior to the death of the said Mrs. Allen?

"Issue No. 3: Was said note being held at the time of the death of Mrs. Sue P. Allen by the Nashville & American Trust Company as the agent of the said Ben D. Ewin, Sr., and subject to his call for delivery?

"Issue No. 4: Was it the intention of the said Mrs. Sue P. Allen to leave the said Ben D. Ewin, Sr., the legacy in her will free, clear and unembarrassed by any claims or demands of her estate upon Ben D. Ewin, Sr.?"

The court overruled the executor's motion for a directed verdict at the close of all the evidence. A motion for a new trial was overruled, and a decree was entered dismissing the original bill, and

the court rendered a decree in favor of Ben D. Ewin against the executor and said estate for the $7,000 legacy, to which the executor excepted, and has appealed and assigned errors.

Complainant Newt Cannon, Jr., did not perfect his appeal.

The assignments of errors, when summarized, are:

(1) There was no evidence to sustain the verdict, and the court erred in not directing a verdict in favor of the executor.

(2) The court erred in holding that the $6,975 note had been canceled by Mrs. Allen and in effect delivered up to Ewin, and in rendering a decree for the amount of the legacy in favor of Ewin and against Mrs. Allen's estate.

Mrs. Sue P. Allen, a widow, was the owner of an estate of about $500,000. She had no children, and her nearest relatives were two half-sisters and two half-brothers; but at the time of her death two half-sisters and one half-brother survived. The half-brother was defendant Ben D. Ewin, Sr.

Mrs. Allen had for years expended considerable sums of money on the needs of her half-brothers, half-sisters, nieces, nephews, and relatives, which were not repaid or expected to be repaid.

Ben D. Ewin, Sr., was married, had six children, and had no estate, property, or income. Mrs. Allen frequently became surety for him on notes, which she subsequently paid.

On October 15, 1926, Mrs. Allen paid Ewin's notes amounting to $6,975, on which notes she was indorser. She asked E. R. Burr, of the American Trust Company, who managed her business affairs, to request Ben D. Ewin, Sr., to execute a note to her for $6,975. Mr. Ewin executed the note and paid interest on it for four months.

At Mrs. Allen's death the note was among her assets at the bank.

Mrs. Allen's will made a bequest to Ben D. Ewin, of $7,000. The note with interest amounted to approximately $7,000. The executor refused to pay the bequest to him, insisting that it should be applied on the note.

Mr. Ewin testified that Mrs. Allen told him before her death that the note was paid and at the bank, and was not held against him; that Mr. Burr, vice-president of the American Trust Company, held the canceled note, and that he, Ewin, could go and get it. This testimony was objected to by the executor, and same was excluded.

Mr. Burr testified that at the request of Mrs. Allen he secured the note from Ben D. Ewin; that it was delivered to the American Trust Company's trust department where it was held in the agency account for Mrs. Allen; that it was held with other assets of Mrs. Allen's; that he had never had any further conversation with Mrs. Allen about this note or with any one else; that Ben D. Ewin, Sr., paid four interest payments on same.

A number of other witnesses testified, without objection, that Mrs. Allen had stated that Ben Ewin would not have to pay the

note; that she did not expect him to pay it. Witnesses testified that Ben D. Ewin, Sr., was the testatrix's baby brother, that she was as devoted to him as if he were her own son, that she adored him and was crazy about him, that she said that Ben would not have to pay that note, that she had loaned him the money and never expected to collect the note; that her family had criticized her for helping Ben, that she did not care how they felt about it as she intended to do more for him, and that Ben did not owe her anything; that Ben wanted to pay her back, but she never expected to let him do it, and that she did not hold anything against him; and that she had fixed it so that Ben would not want for anything; but that she was leaving him that much less in her will. All of this testimony went to the jury without objection, and the question about its admission was not raised in the motion for a new trial.

There are but two determinative questions in this case: First. Was the $6,975 note executed by Ewin to his sister, Mrs. Allen, discharged, renounced, or given to him, and the gift perfected by actual or constructive delivery? Second. Was the oral evidence that she had forgiven the indebtedness, renounced and discharged the note, and had given him that much less in her will, admissible to vary or contradict the terms of the will?

The bequest in the will is as follows:

"I give and bequeath to my brother, Ben R. D. Ewin, the sum of Seven Thousand ($7,000) Dollars."

There is no mention in the will of Ewin's indebtedness to Mrs. Allen.

1. I am of the opinion that the proof is insufficient to show that the note was canceled or given by Mrs. Allen to Ewin, as the evidence of delivery either actual or constructive is lacking. The note was a negotiable note, and is governed by the negotiable instruments statute; the sections pertaining thereto are as follows:

"Sec. 122. Renunciation by holder.—The holder may expressly renounce his rights against any party to the instrument, before, at or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument discharges the instrument. But a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon." Code 1932, section 7446.

"The possession of a note uncanceled by a person other than the maker is prima facie evidence that the debt evidenced thereby is unpaid. Central Nat. Bank v. Stoddard (1910), 83 Conn., 332, 76 A., 472." 5 Uniform Laws Annotated, 601, and cases there cited; Downing v. Whitlow, 211 Ky., 294, 277 S. W., 262.

An unexecuted agreement for cancellation does not discharge a note, and when such agreement is the sole defense a directed verdict for the plaintiff is proper. Ashby v. Butz, 257 Pa., 230, 101 A., 318.

"Where a father, holding a note against his son, indorsed on the note that it was not to draw interest, and, during his·last illness, procured an indorsement to be made in a memorandum book that the note was not to be paid, but there was never any delivery of the note to the son, it was not a valid gift inter vivos, and the son was liable thereon to the father's estate." Burge v. Burge's Adm'r (Ky.), 76 S. W., 873.

Section 119 of the Negotiable Instruments Act providing for the discharge of negotiable instruments is as follows:

"Sec. 119. Instrument how discharged.—A negotiable instrument is discharged:

"(1) By payment in due course by or on behalf of the principal debtor;

"(2) By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation;

"(3) By the intentional cancellation thereof by the holder;

"(4) By any other act which will discharge a simple contract for the payment of money;

"(5) When the principal debtor becomes the holder of the instrument at or after maturity in his own right." Code 1932, section 7443.

Of course, notes are discharged when they are burned or destroyed by the agent of the payee at his request in accordance with his intention to make a gift of the debt to the makers; the destruction constitutes a cancellation. The requirements of writing and delivery in section 122 of the Negotiable Instruments Act must be construed not to exclude the other methods of discharge permitted in section 119. Henson v. Henson, 151 Tenn., 137, 268 S. W., 378, 37 A. L. R., 1131.

To constitute a valid gift inter vivos or causa mortis of a negotiable instrument there must be a delivery with an intention to give; and mere declarations of the gift are not sufficient to prove delivery of the property. Evidence of the declarations of an intention to make a gift must be accompanied by proof of such facts and circumstances as will show a delivery. In other words, the proof of declarations must be accompanied by proof of other facts and circumstances from which it might reasonably be inferred that the donor had made actual delivery. Of course, the delivery may be actual or constructive, but the fact of delivery must be shown by other evidence than the mere declarations of the donor. The courts require strict proof of delivery or some act or circumstance amounting to an actual delivery rather than attribute delivery to

a declaration of gift. Atchley v. Rimmer, 148 Tenn., 319, 255 S. W., 366, 30 A. L. R., 1481; Scholze v. Scholze, 2 Tenn. App., 95.

Hence I am of the opinion that the gift of the note to Ewin and its cancellation was not completed as a gift inter vivos or causa mortis.

But of course the principles of law governing deliveries of gifts inter vivos and causa mortis have no application to wills.

2. The same rules apply to wills as to other written instruments, and ordinarily parol evidence is inadmissible to add to, vary, or contradict the language used. 14 Ency. of Evidence, 498-500; Clark v. Clark, 2 Lea, 723; Horton v. Thompson, 3 Tenn. Ch., 575, 581; Weatherhead v. Sewell, 9 Humph., 272, 302.

Ordinarily declarations of a testator are inadmissible to aid in the construction of his will, except in explanation of latent ambiguities. 14 Ency. of Evidence, 500, 504, 506-507; Hennegar v. Deadrick (Tenn. Ch. App.), 54 S. W., 138; Rodgers v. Rodgers, 6 Heisk., 489, 500; Gourley v. Thompson, 2 Sneed, 387, 391; 40 Cyc., 1427.

There are, however, cases holding that where the creditor leaves a legacy to one of his debtors parol evidence of the testator's intention to release the debt is admissible and constitutes a good defense to an action brought by the executor to recover it. Zeigler v. Eckert, 6 Pa. 13, 47 Am. Dec., 428. But that is not the law in Tennessee. Tennessee has no statute governing wills of personal property; hence wills of personalty are governed by the common law. Taylor v. Taylor, 14 Tenn. App., 101.

"The question in expounding a will," as Sir James Wigram most correctly states in his work on Extrinsic Evidence in Aid of the Interpretation of Wills (2 Ed.) page 7, "is not what the testator meant, but what is the meaning of his words."

"The use of the expression that the intention of the testator is to be the guide, unaccompanied with the constant explanation, that it is to be sought in his words, and a rigorous attention to them, is apt to lead the mind insensibly to speculate upon what the testator may be supposed to have intended to do, instead of strictly attending to the true question, which is, what that which he has written means. The will must be expressed in writing, and that writing only is to be considered." Abbott v. Middleton et al., 7 H. L. Cas. 114, 115 (S. C. 28 L. J. Ch. 110), 25 English Ruling Cases, 732 to 759.

"And so the courts are always careful in discussing the admissibility of extrinsic evidence to recognize the rule that it is the intent of the testator as expressed in the language used which controls, and all evidence admitted is admitted for the purpose of arriving at this particular intent." 14 Ency. of Evidence, 499.

"Even in cases where extrinsic evidence is admitted to explain latent ambiguities, and to perfect imperfect descriptions of bene-

ficiaries,. or the subject-matter of devises or bequests, no evidence is admissible to change or vary the testator's expressed intent. This must always be deduced from the will itself, assisted by such extrinsic evidence. The proofs afforded by such evidence are to be employed merely as an aid to the court in determining what in fact was the expressed intent of the testator; and, if that intent may not be so found, the devise or bequest must lapse, since it is not within the power of a court to make a new will." In re Dominici's Estate, 151 Cal., 181, 90 P., 448, 450.

Parol evidence is not admissible to show an intention not expressed in the will itself or to aid in making a will which the testator intended to but did not in fact make, where the language of the will is plain and unambiguous.

"In other words, the law never opens the door to parol evidence in order to add to or take from wills but for the purpose only of applying their terms or provisions to the objects or subjects therein referred to, and in order to reach a correct interpretation of such language or terms as are therein expressed." 28 R. C. L., 270, sec. 243.

These questions were thoroughly discussed in the case of Weatherhead v. Sewell. 9 Humph., 272, in which Judge Turley differentiated latent and patent ambiguities and stated that the rule admitting extrinsic evidence should be confined to the limit of ascertaining the intent of the testator as expressed in the language used in the will, and that oral evidence should be admitted only for the purpose of arriving at such intent. He said:

"Parol testimony is admissible to explain ambiguities; but in analogy to the principle on which parol evidence is admitted to explain, but not contradict or enlarge the import or expression of an instrument of writing, a distinction runs through the cases between latent and patent ambiguities.

"Mr. Roberts, at page 15 of his work upon the statute of frauds, defines a latent ambiguity to be, where the equivocality of expression, or obscurity of intention does not arise from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by the mere development of extraneous facts, without altering or adding to the written language, or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words and phrases made use of. He defines a patent ambiguity to be one produced by the uncertainty, contradictoriness, or deficiency of the language of an instrument, so that no discovery of facts, or proof of declarations, can restore the doubtful or smothered sense without adding ideas which the actual words will not themselves sustain. And he observes that it follows from this explanation that the statute of frauds, which, in this particular, is

declarative and corroborative of the rule of the common law, virtually forbids, in the cases within its provisions, the resort to extrinsic proof in those instances wherein the ambiguity is patent, and only admits it in those cases in which the ambiguity is latent; and, in such cases, the object of the collateral testimony is only by a comparison of the words of the instrument with external circumstances, whether consisting of facts or declarations, to attach a meaning and applicability to expressions within the limits of their grammatical or legal acceptation. The statute seems in no danger of violation by the admission, for these purposes, of this species of evidence.

. . .

"As these ambiguities are generated by facts, so they may be removed by a further investigation of facts or matter extrinsic. But if these ambiguities occur in the wording of the will, producing a palpable uncertainty upon its face, extrinsic evidence cannot remove the difficulty, without putting new words into the mouth of the testator; which in effect would be to make a will for him." Weatherhead v. Sewell, 9 Humph., 295, 296.

"As the law requires wills to be in writing, it cannot, consistently with this doctrine, permit parol evidence to be adduced, either to contradict, add to, or explain the contents of a will. The principle of this rule, as Mr. Jarman has well said, evidently demands as inflexible adherence to it, even where the consequence is the partial or total failure of the testator's intended disposition. For, it would have been of little avail to require that a will ab origine should be in writing, or to fence a testator round with a guard of attesting witnesses, if, when the written instrument spoke one thing, or failed of explicitness in some respects, its provisions could be corrected, or its deficiencies supplied from extrinsic sources. No principle connected with the law of wills is more firmly established, or sustained by a more continuous line of decisions from the earliest to the latest times. Lord Cheney's Case, 5 Rep. 68 b; Strode v. Lady Falkland, 3 Ch. R., 181; Mann v. Mann, 1 Johns. Ch. [N. Y.], 231; Weatherhead v. Sewell, 9 Humph., 272; Den ex dem. Weatherhead v. Baskerville, 11 How., 357 [13 L. Ed., 717]. The declarations of the testator relied on in the bill are, therefore, wholly inadmissible." Horton v. Thompson, 3 Tenn. Ch., 580; Clark v. Clark, 3 Lea, 723; Mackie v. Story, 93 U. S., 589, 23 L. Ed., 986; Wilkins v. Allen, 18 How., 385, 15 L. Ed., 396.

As the full extent of the testator's bounty is supposed to be disclosed by the will, a legacy to a debtor does not operate as a release of the debt unless the will clearly manifests the intention that it shall so operate, which intention may be manifested by express words or by necessary implication. 40 Cyc., 1889 to 1890; 2 Williams on Executors (7 Am. Ed.), 618; 28 R. C. L., 298.

"On principle, any evidence of the testator's declarations, or other parol proof of his intention to release the debt by giving the

legacy, short of an actual, independent release, is wholly inadmissible, on the ground that there is no presumption on the subject, and the admission of such testimony would tend to vary the terms of the will and supply an intention not disclosed `by its language." Sizer's Pritchard on Wills and Executors, sec. 466; 40 Cyc., 1889 (v).

The fact that a creditor gives the debtor a legacy, without more, raises no presumption that he intended to forgive the debt.

"A testamentary gift from a creditor to a debtor stands upon an entirely different footing from one by a debtor to his creditor. . . . A legacy from a creditor to his debtor, unaccompanied by language in the will or exterior to it expressly showing the special intent, whether equal to, greater or less than, the debt, raises no presumption whatever, either of law or of fact, that the testator intended thereby to excuse, release, or discharge the debt, so that the legatee would be entitled to claim and receive the whole amount bequeathed, but would be freed from all liability to pay the debt. In fact, such a legacy produces no effect upon the indebtedness. The only effect which such a legacy given simpliciter can have is to create the right to an equitable set-off. The legatee might not be forced, by means of a legal action, to pay the debt to the executors, when he could in turn recover back from them the same amount, or a part thereof, by virtue of his legacy. A court of equity, in order to prevent this circuity of action, may permit the executors to set off the debt against the demand made on them for the legacy; and if the estate is solvent, so that the debtor will be entitled to receive payment of his legacy, the court may compel the executors to give him credit for the amount of the legacy, when they are seeking to enforce the claim of the estate upon him for the debt." 2 Pomeroy's Equity Jurisprudence (3 Ed.), sec. 541.

"A legacy to a creditor does not extinguish the debt; unless it was so intended by the testator. A legacy given and accepted by a creditor of the testator does not extinguish the debt of the legatee against the testator. To extinguish a debt of the legatee, it must clearly appear from the will that the testator intended the legacy as a payment instead of a bounty." German v. German, 47 Tenn. (7 Cold.), 180.

Admission of parol evidence about the testator's intention, without objection, where there is no ambiguity, does not change the situation "for the very evident and all sufficient reason that no such desire and intention were incorporated in the will." Parol evidence of such intention was apparently admitted without objection in the cases of Weatherhead v. Sewell, 9 Humph., 273, and Clark v. Clark, 2 Lea, 723. The cases of Dixon v. Cooper, 88 Tenn., 177, 12 S. W., 445, and Horton v. Thompson, 3 Tenn. Ch., 575, were heard on demurrers, but the court held that if the facts alleged were admitted to be sufficient to show the testator's intention, dehors the will, that

would give the parties no interest for the reason that no such intention was incorporated in the will.

I think there is little doubt that Mrs. Allen intended to cancel the note and to give her brother, Ben D. Ewin, Sr., that much less in the bequest of the legacy to him, but she intimated no such intention in the will, and extraneous evidence of such an intention is not admissible for the purpose of changing the will. Parol evidence cannot be admitted either to contradict, add to, or explain a will where there is no ambiguity on its face. However, I think the fourth issue as worded was immaterial and should have been disregarded by the court. Carpenter v. Wright, 158 Tenn., 289, 13 S. W. (2d), 51.

3. Defendant Ben D. Ewin, Sr., contends that the court erred in refusing to admit in evidence his testimony as to conversations had with Mrs. Allen in regard to cancellation of the note, because he says he was called by the opposite side, Newt Cannon, Jr. I think the chancellor was correct in sustaining the objections to this testimony, as the cross-bill was filed by the executor, and Ben D. Ewin, Sr., was the party for or against whom a judgment might be rendered. Code, sec. 9780; Atchley v. Rimmer, 148 Tenn., 303, 255 S. W., 366, 30 A. L. R., 1481; Wilson v. Wilson, 151 Tenn., 486, 267 S. W., 364.

"The court will also consider the interest of the parties when one of them is . . . called to testify by another, no matter what his technical position on the record may be." Roy v. Sanford, 140 Tenn., 382, 204 S. W., 1159, 1161; Trabue, Davis & Co. v. Turner, 10 Heisk., 447, 453; Nashville Trust Co. v. Williams, 15 Tenn. App., 445.

However, I understand that the majority opinion is not based on this testimony.

In conclusion, I am compelled to dissent for the reasons above set out. The bequest to Ben D. Ewin in the will is as follows: "I give and bequeath to my brother, Ben R. D. Ewin, the sum of Seven Thousand ($7,000) Dollars." That is a plain statement, and there is no ambiguity about that sentence.

He was indebted to his sister at this time, but there is no mention of the fact in the will.

At the time Mrs. Allen made her will she was indorser on Ewin's notes to the extent of about $7,000, which she knew would have to pay. She possibly intended to give this to him when she paid the notes, but she made no provision in the will for the payment of the notes as an additional legacy. She evidently intended to provide for that aside from the will. Several years after making her will she took from him the note in question. Whether or not she changed her intention to pay the notes on which she was indorser cannot affect the will. In construing wills the court will take into consideration the facts and circumstances surrounding the testator at the time of the execution of the will. Thompson on Construction of Wills, secs. 45 and 47

My view is that the will calls for no explanation, and the matter of the note is a separate transactions which will have to be settled without reference to the will, and is concerning a situation that arose long after the will was written.

Where the terms of the will are plain and there are no ambiguities, the intention of the testator as expressed in the will must control. Martin v. Hale, 167 Tenn., 438, 71 S. W. (2d), 211.

The fact that her bequest to her brother was less than some of her bequests to strangers is not an ambiguity, and parol evidence cannot be admitted to explain it.

The only question in this case is whether she intended to collect this note executed several years after the will was written, and the settlement of that question can in no way affect the provisions of the will; therefore, I think the decree should be reversed.