IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 23, 2008 Session

## THE ESTATE OF CHARLES THOMAS McCRAW, Deceased v. JoAN LIKINS

Direct Appeal from the Chancery Court for Fayette County
No. P-3-325     Allen W. Wallace, Chancellor

No. W2008-00564-COA-R3-CV - Filed February 12, 2009

This appeal arises from a decedent's testamentary obligation to distribute his estate in accord with a marital dissolution agreement. The trial court determined that the decedent's codicil obligated his estate to pay joint debts that the decedent incurred with his fiancè, and his estate could not seek contribution from fiancè for paying more than half of the debts. The trial court also determined that this distribution did not violate the marital dissolution agreement that decedent had negotiated with his ex-wife. We affirm the trial court on these two determinations. We, however, reverse the trial court's finding that the estate was not required to reimburse fiancè for payments that she made on the debts after the decedent's death and before the trial court ordered the estate to pay the debt.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part; Reversed in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Thomas M. Minor, Somerville, Tennessee, for the appellant, Beverly McCraw, Executrix of the Estate of Charles Thomas McCraw.

Lee S. Saunders, Somerville, Tennessee, for the appellee, JoAn Likins.

### OPINION

### Facts & Procedural History

Decedent Dr. Thomas McCraw ("Decedent") and Executrix Beverly McCraw ("Ms. McCraw") were married for approximately 36 years. In 1969, while they were married, Decedent executed a will ("Will") leaving his entire estate to Ms. McCraw. The parties were divorced in 1994, and pursuant to their divorce, Decedent and Ms. McCraw executed a Marital Dissolution Agreement ("MDA"). The MDA provided that Decedent would redraft his 1969 will to give Ms. McCraw "an irrevocable life estate in all Husband's realty, with fee vesting

irrevocably in the parties' children" and to give his personal property to the their children.[1] The MDA also provided that the Decedent could only alter the terms and provisions of the revised will with Ms. McCraw's signed approval. Upon entering a final decree of divorce, the trial court approved and incorporated the MDA into its order. On January 17, 1995, Decedent executed a typed codicil ("First Codicil") to his will in conformity with the MDA and the court's Final Decree of Divorce.[2]

Several years after his divorce, Decedent became engaged to JoAn Likins ("Ms. Likins"). At some point, Decedent purchased an ATV (four-wheeler). At that time, Decedent wrote on the inside of the front cover of the four-wheeler's brochure ("Second Codicil"). The message stated "Happy Birthday. In case of my demise or incapacity this unit belongs to JoAn Likins, 5-22-99 /s/ Dr. Charles McCraw." Since the date of purchase, Ms. Likins has retained possession of the ATV, and it was her understanding that she owned the ATV from the date it was purchased. Ms. Likins did not, however, receive possession of title to the four-wheeler, and she is not named in the financing documents.

Decedent and Ms. Likins also signed jointly for several loans. On May 24, 1999, Decedent and Ms. Likins received a $75,750.00 joint loan from the Bank of Mason and used it to purchase the real property next door to where Ms. Likins lives. This property contains two homes, which she rents out. Decedent and Ms. Likins also took out a $16,150.10 joint loan from the Bank of Mason on May 6, 2000. This loan was a combination of two smaller loans that Decedent and Ms. Likins owed jointly, and the additional money was used to do work on the rental property and dig a pond at Decedent's home. We hereinafter refer to both the $75,750.00 and $16,150.10 loans as the parties' "joint loans."

---

[1]The MDA states the following:

> 7. Husband's Will. Husband agrees and contracts that he shall immediately re-draft and revise his Last Will and Testament (a copy of which is attached hereto as Exhibit A) to give Wife an irrevocable life estate in all Husband's realty, with fee vesting irrevocably in the parties' children, and that all Husband's personalty shall be irrevocably transferred directly to the parties' children. Husband shall provide Wife with a copy of his re-drafted and revised Will within 60 days of the entry of the Final Decree of Divorce in this cause. The parties acknowledge that this Marital Dissolution Agreement shall be sufficient to enforce the terms of Husband's re-drafted and revised Will, as set forth hereinabove, in the event of Husband's death, unless Wife has signed an agreement altering the terms and provisions of Husband's Will. The parties further agree that this provision of the parties' Marital Dissolution Agreement is not effected by Tennessee Code Annotated § 32-1-201, Tennessee Code Annotated § 32-1-202, or any other law to the contrary.

[2]Decedent's First Codicial to his last will and testament states the following:

> I hereby change my Will to give my former wife, Beverly McCraw, a life estate only in realty owned by me at the time of my death with the remainder vesting in my children in equal shares. I further modify my Will to devise to my children all my personalty in equal shares.

Before his death, Decedent gave Ms. Likins a sealed envelope addressed to Decedent's attorney. The envelope stated, "JoAn give to Lee if I don't make it. Yours forever /s/ Dr. Charles McCraw, P.S. Make copies of everything." Inside the envelope was a letter dated June 30, 2000. Decedent wrote the letter ("Third Codicil") on his professional letterhead; the letter stated, "Dear John Shelton and Lee: Please take care of JoAn and Johna: My kids and there [sic] Mother will not: Please know I love them with all my heart: Our LOANS are to be paid by my Estate: Thank you /s/ Dr. Charles McCraw."

Decedent died on July 6, 2000, and upon his death, Ms. McCraw petitioned the trial court to establish a lost will and codicil. The trial court admitted the will and codicil as Decedent's Last Will and First Codicil thereto. Subsequently, Ms. Likins sought to intervene and admit Decedent's two handwritten letters as holographic codicils. Although Ms. McCraw filed a response that the letters failed to meet the requirements of Tennessee Code Annotated § 32-1-101, et seq. and violated the MDA, the trial court admitted the handwritten codicils to probate on April 5, 2002. The trial court reserved the issue of whether the codicils violated the MDA. Ms. Likins filed a Motion for Declaratory Judgment and To Quiet Title in Real Property, and Ms. McCraw filed a Complaint to Contest Holographic Codicils, alleging undue influence and lack of testamentary capacity.

On July 26, 2002, the trial court held a hearing to determine whether the holographic codicils violated the MDA. The trial court entered an order on September 6, 2002, addressing whether the holographic codicils violated the terms of the MDA. The trial court found that the Second Codicil, written on May 22, 1999, was in violation of the MDA because it purported to bequeath personal property at Decedent's death.[3] The trial court also found, however, that the Third Codicil, written on June 30, 2000, did not violate the MDA; the estate, therefore, was obligated to pay any unpaid balance of the joint debts. The trial court held that by the terms of the Third Codicil Decedent's estate had no right of contribution against Ms. Likins, but the court also found that the estate was not required to reimburse Ms. Likins for the payments that she made on the joint loan after Decedent's death.

Both parties petitioned the trial court to alter or amend its September 6, 2002 order, and Ms. McCraw also requested an interlocutory appeal at that time. The trial court denied both motions to amend and the request for an interlocutory appeal. In this order, the trial court also granted the Estate a lien on the real property to secure reimbursement for the amount the estate paid in case the Estate was entitled to contribution from Ms. Likins. Ms. Likins filed a Motion to Dissolve the Lien, but the trial court denied Likins' Motion to Dissolve Lien, declaring its September 6, 2002, order as a final judgment pursuant to Rule 54.02. Ms. McCraw, on behalf of the estate, appealed the trial court's September 6, 2002 order to this Court. We found, however, that the trial court had not resolved Ms. McCraw's Complaint to Contest Holographic Codicils or Ms. Likins' Motion for Declaratory Judgment and to Quite Title in Real Property, and we

---

[3]The parties do not appeal this determination.

-3-

dismissed the appeal. *Estate of McCraw v. Likins*, No. W2004-01172-COA-R3-CV, 2005 WL 1522024 (Tenn. Ct. App. June 24, 2005).

The parties returned to the trial court and entered a Consent Order of Dismissal of Motion for Declaratory Judgment and to Quiet Title. That same day, the trial court entered an Order of Voluntary Non-Suit, dismissing Ms. McCraw's Complaint to Contest Holographic Codicils with prejudice and assessing costs against Ms. McCraw. Now that there is a final disposition, Ms. McCraw appeals the trial court's order entered September 6, 2002.

## Issues Presented

On appeal, the parties present three separate issues. First, Ms. McCraw argues that the trial court erred in obligating Decedent's Estate to repay the Decedent's joint debts with Ms. Likins while denying it the right to seek contribution from Ms. Likins. Second, Ms. McCraw alleges that the trial court erred by holding that the June 30, 2000 codicil did not violate the terms of Decedent and Ms. McCraw's MDA. We will address these two issues together. In addition, Ms. Likins raises a third issue, that the trial court erred in determining that Decedent's Estate was not required to reimburse Ms. Likins for the payments that she made on the joint debts after Decedent's death.

## Standard of Review

Because the trial court adjudicated this case without a jury, we review the decision *de novo* upon the record and presume the correctness of the trial court's factual findings. Tenn. R. App. P. 13(d); *Fowler v. Wilbanks*, 48 S.W.3d 738, 740 (Tenn. Ct. App. 2000). We will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). If the trial court fails to make findings of fact, however, our review is *de novo* with no presumption of correctness. *Archer v. Archer*, 907 S.W.2d 412, 416 (Tenn. Ct. App.1995). On the other hand, we review the trial court's application of law *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). Similarly, we review mixed questions of law and fact *de novo*, with no presumption of correctness. *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005).

## Paying Joint Debts from the Estate Without Maintaining a Right of Contribution

Ms. McCraw's argument on this issue is twofold: First she argues that the language in the Third Codicil does not prohibit Decedent's Estate from seeking contribution from Ms. Likins for paying her joint debts with Decedent. Second, Ms. McCraw argues that to the extent that the Third Codicil does prohibit the Estate from seeking contribution, it removes assets from Decedent's estate and, thereby, violates the MDA.

In her first argument, Ms. McCraw alleges that the Third Codicil does not extinguish the Estate's right to seek contribution from Ms. Likins. Ms. McCraw quotes Prichard on Wills and Administration of Estates § 1015 (5th ed.) for the proposition that "a mere bequest does not release or extinguish the legatees debt to the testator where such intent does not clearly appear on the face of the will." Referring to Decedent's and Ms. Likins' joint debts, the Third Codicil states "our loans are to be paid by my estate." Ms. McCraw argues that the language in the Third Codicil does not prohibit Decedent's Estate from seeking contribution from the co-maker of Decedent's joint loans.

Ms. Likins, on the other hand, argues that the language in the Third Codicil expressly directs Decedent's estate to pay the joint loans completely. Because Decedent's Will already obligated the Estate to pay Decedent's debts,[4] Decedent, who was a sophisticated party,[5] intended for his Estate pay both his and Ms. Likins' obligation on the loan. Construing the language in the Will and Third Codicil together, we agree with the trial court that Decedent did not intend for Ms. Likins to be indebted to Decedent's Estate when it paid the joint loans. Ms. Likins also asserts that the court may consider extrinsic evidence of the facts and circumstances surrounding Decedent's execution of the Third Codicil, such as her relationship with Decedent.

An estate has not only a right, but an obligation to collect and preserve estate assets, including a duty to collect debts due to the estate. *See Perry v. Wooten*, 24 Tenn. 524 (1845); *McFarlin v. McFarlin*, 785 S.W.2d 367, 370 (Tenn. Ct. App. 1989). When one of several parties that are jointly liable on common debts pays more than his share to discharge the debt, he acquires a right of contribution against those debtors who were equally liable on the debt. *Winebarger v. Winebarger*, 653 S.W.2d 746, 748–49 (Tenn. Ct. App. 1983); *Hardy v. Miller*, No. M1998-00940-COA-R3-CV, 2001 WL 1565549, at *5 (Tenn. Ct. App. Dec. 10, 2001)(*no perm. app. filed*). This rule is an equitable principle that, among other things, applies to partnerships, joint ventures, and joint debts. *Newson v. Shackleford*, 43 S.W.2d 384, 385 (Tenn. 1931); *Hardy,* 2001 WL 1565549, at * 5–6. The general rule is that absent proof to the contrary, co-obligors must contribute equally to discharge their common obligations. *Winebarger*, 653 S.W.2d at 748–49. Generally, therefore, Decedent's estate may seek contribution from Ms. Likins for the joint debts that it discharges.

Decedent may, however, have released or extinguished his Estate's right to contribution in the Third Codicil. The general rule is that a mere bequest in a will does not release or extinguish debt owed to the estate where an intent to release does not clearly appear on the face

---

[4]Decedent's Will stated,

> I direct that all *my* just debts, succession and inheritance taxes and funeral expenses be first paid by the Executrix of this my Last Will and Testament out of funds coming into her hands as such Executrix.

[5]Decedent's divorce attorney testified that Decedent had a sophisticated knowledge in business dealings and his legal knowledge was beyond that of a lay person.

of a will. *Cannon v. Ewin*, 77 S.W.2d 990, 992 (Tenn. Ct. App. 1934). It is well established, however, that the cardinal rule of will construction is that a court should seek to discover the testator's intent and give effect to that intent unless it contravenes a rule of law or public policy. *Stickley v. Carmichael*, 850 S.W.2d 127, 132 (Tenn. 1992). When ascertaining a testator's intent, "it is necessary to look to the entire will and codicil, if any, and not to isolated parts." *Id.* (quoting *Martin v. Taylor*, 521 S.W.2d 581, 584 (Tenn. 1975)). As this Court has stated,

> the testator's intention must be ascertained from "that which he has written" in the will, and not from what he "may be supposed to have intended to do," and extrinsic evidence of the condition, situation and surroundings of the testator himself may be considered only as aids in the interpretation of the language used by the testator, and "the testator's intention must ultimately be determined from the language of the instrument weighed in the light of the testator's surroundings, and no proof, however conclusive in its nature, can be admitted with a view of setting up an intention not justified by the language of the writing itself."

*In re Crowell*, 154 S.W.3d 556, 559 (Tenn. Ct. App. 2004)(quoting *Nichols v. Todd*, 101 S.W.2d 486, 490 (Tenn. Ct. App. 1936)).

When considering the language in both Decedent's Will and Third Codicil, we agree with the trial court that Decedent intended his Estate to pay the joint debts without seeking contribution from Ms. Likins. Decedent's Will already obligated his Estate to pay off his debts, which legally entitled the Estate to seek contribution against any co-obligors of those debts. In the Third Codicil, Decedent expressed a different intent when he requested that Ms. Likins and her daughter be cared for and wrote "our loans are to be paid by my estate." We believe that the language pertaining to the payment of debts clearly and unambiguously obligated the estate to pay the joint loans and extinguished Ms. Likins' obligation to both the Bank of Mason and Decedent's Estate.[6]

In her second argument, Ms. McCraw alleges that if the Third Codicil prohibits Decedent's Estate from seeking contribution from Ms. Likins, it violates the MDA. In her brief, Ms. McCraw concedes that the MDA permitted Decedent to sell, dispose, gift away all of his property, and incur additional debt during his life. She argues, however, that if the Third Codicil prohibits a right of contribution, it alters the provisions of the Last Will and First Codicil by removing assets from the Estate without her agreement.

---

[6]As this Court pondered in *Cannon v. Ewin*,

> "if [Decedent] did not intend to release the debt, why would [he] give with one hand and take back with the other? Why would [he] adopt the device of giving to the debtor the amount of the debt, with the intention that the legacy would be paid and then handed back to pay the debt?"

*Cannon v. Erwin*, 77 S.W.2d 990, 993 (Tenn. Ct. App. 1934). If that was Decedent's intent then the Third Codicil would be purposeless.

Although a marital dissolution agreement may be incorporated into a final decree of divorce, it is a contract and is subject to the rules governing the construction of contracts. *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001). Because an MDA is, in essence, a contract between a husband and wife in contemplation of a pending divorce, we seek to ascertain their intention from the contract as a whole and give effect to it. *Briceno v. Briceno*, No. M2006-01927-COA-R3-CV, 2007 WL 4146280 (Tenn. Ct. App. Nov. 21, 2007)(*no perm. app. filed*). As with other contracts, it is the court's task to consider the usual, natural, and ordinary meaning of the contractual language to ascertain the parties' intent. *Johnson*, 37 S.W.3d at 896. Where the contractual terms are ambiguous and the court cannot ascertain the parties' intent from the literal interpretation of the language, a court must apply established rules of construction. *Planters Gin Co. v. Federal Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002). "A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Johnson*, 37 S.W.3d at 896 (quoting *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975)). An MDA is not ambiguous merely "because the parties may differ as to interpretations of certain of its provisions." *Id.* at 896 (quoting *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.,* 884 S.W.2d 458, 462 (Tenn. Ct. App. 1994)).

Although we find no case law directly on point, this Court often considers whether a decedent's disposition of his estate violates a contractual obligation to create or retain a will in the context of mutual wills and will contracts,[7] and we believe that the case *In re Estate of Cammack* is instructive on this point. In *Cammack*, husband and wife executed mutual and reciprocal wills and entered into a contract that wife would not change her will if husband predeceased her. *In re Estate of Cammack*, No. M1999-02382-COA-R3-CV, 2000 WL 1679492, at *1 (Tenn. Ct. App. Nov. 9, 2000)(*no perm. app. filed*). Both wills left the bulk of the estate to the surviving spouse but provided that upon death of the survivor the estate passed to husband's children. *Id.* The contract provided that husband willed his estate to wife with the understanding that she would devise it to husband's children. *Id.* Upon husband's death, wife received most of husband's estate. *Id.* at *1–2. Subsequently, wife began gifting property she inherited from husband to her own children. *Id.* Although husband's children asserted that wife was dissipating the estate, and, thereby, in breach of her contract with husband, this Court found that nothing in the contract prevented wife from selling or distributing the estate. *Id.* at *4. The court

---

[7]In 2001, the Tennessee Supreme Court considered the effect of a MDA that provided wife with half of her husband's retirement benefits. *Johnson v. Johnson*, 37 S.W.3d 892, 894 (Tenn. 2001). Post-retirement, husband elected to receive a portion of his retirement pay as disability benefits. *Id.* Interpreting the MDA, the supreme court held that wife was entitled to half of the entire amount that husband would ordinarily receive from retirement, both pay and benefits. *Id.* at 896-97. Because wife's interest in husband's retirement benefits *vested* as of the date that the trial court entered the divorce decree, husband's unilateral decision to elect benefits in place of part of his pay was an impermissible modification of marital property and violated the divorce decree. *Id.* at 897-98. This case before us is, however, distinguishable from *Johnson* because a legatee's interest in property conveyed through a will cannot vest until the testator dies. *J.H. Doughty v. Hammond*, 341 S.W.2d 713, 553-54 (Tenn. 1960).

-7-

determined that the contract required wife to refrain from changing her will after husband died and wife did not breach that promise. *Id.* at *4.[8]

In this case, we do not interpret the MDA to prohibit Decedent from obligating his estate to pay the joint debts completely. Decedent's Will unambiguously states that his Estate was to first pay his debts. The MDA only provided that Decedent revise his Will to give Ms. McCraw a life estate in Decedent's real property and to give his personal property and the remainder interest in the real property to his and Ms. McCraw's children. The MDA also set forth that the MDA itself would be sufficient to enforce the terms of Decedent's revised Will unless Ms. McCraw signed an agreement altering the terms and provisions of Decedent's Will. Nothing in the MDA prohibited Decedent from using or disposing of his estate during his lifetime. On the contrary, Ms. McCraw testified before the trial court that she understood that the property dispositions made in Decedent's Will and First Codicil did not take effect until Decedent's death, and she anticipated that Decedent had ongoing living expenses and could incur more debt. Decedent was, therefore, free to incur debts, such as his joint debts with Ms. Likins, and we do not believe that by doing so he removed assets of the estate. Additionally, we do not find that Decedent altered his will by requiring his Estate to pay all obligations, including Ms. Likins, on the debts he incurred during his lifetime. We, therefore, affirm the trial court's holding that Decedent's estate is obliged to pay the joint debts without any right of contribution.

## Reimbursement

Appellee raises the additional issue that Decedent's estate must reimburse her for payments she made on the joint loans after Decedent died. From Decedent's death on July 6, 2000 until the trial court ordered Decedent's estate to pay the joint loans on July 26, 2002, Ms. Likins made payments that were due on the $75,750.00 secured loan. Tennessee Code Annotated § 32-3-101 states that

> [a] will shall be construed, in reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, and shall convey all the real estate belonging to the testator, or in which the testator had any interest at the testator's decease, unless a contrary intention appear by its words in context.

---

[8] This Court came to the opposite conclusion in *Merritt v. Yates*, No. M1999-00775-COA-R3-CV, 2000 WL 1483476 (Tenn. Ct. App. Oct. 10, 2000) (*no perm. app. filed*). In that case, however, the court noted the following:

> With this ruling we by no means suggest that [wife] may not reasonably use for her own benefit the property which she received from [husband]. We merely recognize that the mutual wills made by [husband and wife] simply limit [wife's] use of the property to *reasonable* use, and that [wife] may not dispose of the property in a manner inconsistent with the obvious intent of the wills.

*Id.* at *3.

Tenn. Code Ann. § 32-3-101 (2007). We, therefore, construe that Decedent's instruction to pay the joint loans refers to payment of the debt as it existed upon his death. Any other interpretation would enable the estate to avoid part of its obligation by deferring payment of the debt as long as possible. Ms. Likins, therefore, is entitled to the full amount of the joint debts as of the date of Decedent's death. We find that Decedent's estate should reimburse Ms. Likins for the regular payments she made from Decedent's death until the trial court entered its July 26, 2002 order, the amount to be determined by the trial court on remand.

## Conclusion

For the foregoing reasons we affirm in part and reverse in part. Costs of this appeal are taxed to the Appellant, The Estate of Charles Thomas McCraw, and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE